James C. Steadman, Impleaded with Louisa Steadman, Plff. in Err., v. Willard G. Steadman.

To establish undue influence in procuring a will it is not necessary to show particular acts at the precise time the instrument was executed.

It is enough to show that previous acts, threats, and improper conduct had produced an undue impression on the testator's mind which remained and operated in procuring the will.

Part of a will may be void because procured by undue influence although the rest is valid.

(Argued May 1, 1888. Decided May 25, 1888.)

January Term, 1888, No. 137, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Error

. NOTE.—For evidence sufficient for an issue to determine testamentary capacity, see note to McPherson's Appeal, 8 Sad. Rep. 211.

to the Common Pleas of Warren County to review a judgment on a verdict in an issue from the Orphans' Court that part of a will was procured by undue influence, March Term, 1887, No. 81.   Affirmed.

This was an issue on a precept from the orphans' court to try, by a jury, the two questions stated in the charge.

The material portions of the will of James Steadman were as follows:

Second. After the payment of the debts and expenses above mentioned, I give, devise, and bequeath to my beloved wife, Louisa Steadman, the residue of my personal property absolutely, and the use of all my real estate while she lives.

Third. I give, devise, and bequeath unto my son Willard G. Steadman the house and lot now owned by me and situated on Third street, in Warren borough, Warren county, Pennsylvania, subject to the right of my beloved wife to the use of the same during her life, as aforesaid.

Fourth. I give, devise, and bequeath unto my son, James C. Steadman, all the rest and residue of my real estate of which I may die seised, subject to the right of my beloved wife to the use of the same during her life, as aforesaid.

Under this will the share of James C. Steadman was worth about five times as much as that of Willard G. Steadman.

The evidence showed that James C. Steadman was idle, vicious, and frequently drunk.   While drunk or sober he was brutal and abusive to the testator and systematically threatened and bullied him.

During the trial the defendant, under objection and exception produced evidence of James C. Steadman's conduct toward the testator in 1879 or 1880 [1] and 1884 [2].   The testator died in 1885.

BROWN, P. J., charged the jury as follows:

As this case stands upon the record, Louisa Steadman and James C. Steadman are the plaintiffs, Willard G. Steadman is the defendant.   When I use the terms plaintiff and defendant, you will understand which party I mean.   The party contesting the validity of the will is Willard G. Steadman, defendant. The parties seeking to uphold it are Louisa Steadman and James C. Steadman, the plaintiffs.

James Steadman, deceased, who, it appears, had lived in Warren borough for many years, died on May 4, 1885. He executed, under date of May 1, 1885, in due form and in the presence of two witnesses, the instrument that has been given in evidence as his last will. This instrument was presented for proof to the register of the county, but Willard G. Steadman objected that the paper thus presented was not, in fact, the will of his father, James Steadman; because, as he claimed,—First, that James Steadman, at the time of the execution of the paper, was not of sound disposing mind and memory; and second, that the instrument was procured to be executed by duress, fraud, and undue influence. Upon this objection being made, the register certified the matter to the orphans' court, and as the orphans' court has no jury for the trial of controverted questions of fact, the matter is brought into this court, that it may be determined by a verdict of the jury, whether the matters alleged against the validity of the will are or are not true.

The issue here involves two questions: First, Was the testator, at the time of the execution of the instrument, of sound, disposing mind and memory? The formal execution of the instrument not being disputed, the burden of showing the want of testamentary capacity is on the defendant.

A testator is competent to make a will when, at the time, he has an intelligent knowledge and understanding of what he is doing, a knowledge of the property that he possesses, an intelligent perception and understanding of the disposition he wishes to make of it and of the persons he wishes to be the recipients of his bounty. Mere infirmity of body or of mind, whether from sickness, old age, or other causes, will not incapacitate a man from making a will if enough intelligence remains to fill the requirements stated,—*viz.*, to know the property he possesses, and what he desires to do with it, and the persons he desires to have it; in other words, enough intelligence to understand the business of making his will. The law presumes that every person of full age has the mental capacity to make a will.

We say that the law presumes that when James Steadman executed the paper in suit, he was mentally competent so to do. And we further say that there is no evidence that will justify the jury in finding that he was not mentally competent to make a will. And the counsel for the defendant very candidly says to you, or in your hearing, that he does not claim that the evidence in the case will justify a verdict against the validity of

the will on that ground; only urging the fact of his bodily and mental weakness as bearing upon the other issue in the case. Hence, we now say to you, upon the first issue, your verdict should be in favor of the plaintiffs; that is to say, finding that James Steadman was of sound disposing mind and memory. This leaves you to answer, from the evidence, the question of fact raised by the second issue that is certified to us, *viz.*, Was the execution of the alleged will procured by undue influence which operated upon the mind of the testator? In this, as in the case of testamentary capacity, the law presumes that it was voluntarily made and without any undue influence brought to bear on the testator. And upon this issue the verdict should be in favor of the plaintiffs, unless the defendant has satisfied you, by the weight of the evidence, that the will was procured to be made by some fraud practised, some threats, or misrepresentations, some undue flattery, or some physical or moral coercion employed, so as to destroy the free will or the free agency of the testator; and that these influences, or some of them, were so operative as to destroy the free will of the testator at the time of making the will, and thus induce him to make the will differently from what he really wished to make it.

The legitimate object of inquiry (I call your attention particularly to this) is not whether the disposition of the property made by the will is, in the opinion of the jury, a just and equitable one. The law recognizes the right of a person to dispose of his property as he thinks best. It is not whether the will was procured to be made at the solicitation of a son or near relative, and it is not whether the beneficiary was a fit object of the father's bounty, or whether he had or had not been kind and dutiful. Solicitation properly made of the father by a son to make a will in a particular way is not objectionable, or, at least, will not of itself defeat the will so made. Unkind behavior to the father at times by a son, who is wholly or chiefly benefited by the provisions of a will does not of itself constitute undue influence so long as the father remains a free agent, and makes his will as he desires to make it.

The all important question, then, upon the issue of undue influence in the case of the instrument, claimed by the plaintiffs and denied by the defendant to be the will of James Steadman, deceased, is, taking the whole evidence into consideration, Does it reflect the real testamentary wishes and desire of the testator? The presumption of law is, that it does. Hence, in substance as

we have said before, the question is, Does the evidence on the part of the defendant overcome this presumption, and satisfy you that at the time of making the will the mind of Mr. Steadman was, by improper influence, by threats and by behavior, having reference to the disposition of the property itself, so subjugated to the will of the son, who is now one of the plaintiffs in the issue, as to destroy his free agency and thence induce him to sign and execute an instrument not in accordance with his real wishes? That is the only real issue in this case, and where the whole matter turns.

Our supreme court has said that in order to establish undue influence, such as will affect the validity of a will, proof must be made either of some fraud practised, some threats or misrepresentations made, or some undue flattery, or some physical or moral coercion employed so as to destroy the free agency of the testator, and these causes, or some of them, must appear to have operated as a constraint at the time of the making of the will. We do not mean to be understood as saying that the threats or other undue influence that will invalidate a will must be such as was exerted at the time the will was executed. It is enough if these threats or this undue influence was exerted from time to time before the actual making of the will, and continued to operate on the mind of the testator, and thus induce him to make an instrument that did not reflect his real wishes.

I have endeavored to bring your minds to the real question that you are to determine from the evidence. It is for you to answer the question, as I have stated, from the evidence; and in thus calling your attention to the essential and all controlling question, when we shall have answered the points presented, we have said everything that we have to say to you. It is for you to take all of this evidence and determine whether there was such improper influence and threats used as operated upon the mind of James Steadman, at the time of making the will, and induced him to make an instrument that did n ' reflect his real wishes. Unless you so find, your verdict upon both issues will be for the plaintiffs. If you do find such improper influence, constraining Mr. Steadman to make a will not in accordance with his wishes, then your verdict upon the second issue will be in favor of the defendant.

Upon the return of the jury for instructions as to the effect

of a given verdict on the rights of the widow under the will, the court further charged:

We say to the jury that this question is not involved in the issue that is presented to them. The issue that the jury are to determine is whether the execution of the paper alleged to be the last will and testament of James Steadman, deceased, was procured to be executed by duress, fraud, imposition, and undue influence exercised over the mind of said testator. This is the sole question.

At the request of counsel for the defendant the court also charged:

[On one point that was presented by the defendant in this case, it is possible that we failed to make ourselves clearly understood. The point in substance is that if you should find that the will was procured by undue influence, then your verdict, upon what we have designated as the second issue in the case, may be in favor of the defendant for so much of the will as was thus executed under the undue influence. In the case before us, if, in your judgment, the evidence shows such to be the fact, you could find in favor of the defendant, except as to so much of the will as provides for the widow of the testator. Possibly this is the question that you have in your minds, and we have called you in for the purpose of calling your attention to it.] [5]

The defendant submitted, *inter alia,* the following points:

2. If the jury believe from the evidence that the will in question makes an unequal division of the real estate between the two sons, largely preferring James; that this preference is in conflict with the settled wish and intention of the testator, down to near the time of the will, and after his last sickness began; that at the time he made it he wished it otherwise, but was induced so to prefer the elder son by the violence, threats, undue urging, and moral coercion of the son; or that the testator would not have so made his will but for his fear, induced by the improper acts and conduct of James, of violence toward himself or others, then the verdict should be for the defendant as to so much of the will as was thus executed.

*Ans.* Affirmed. [4]

3. No act of James C. Steadman's at precise time of the execution of the paper is necessary to be shown to establish his undue influence, provided the jury are satisfied that previous

acts, threats, and improper conduct had produced an undue impression upon his father's mind which remained and operated in procuring the making of the will.

*Ans.* Affirmed.   [3]

The jury returned the following verdict:

First. That at the time of the execution of the writing alleged to be the last will and testament of James Steadman, deceased, the testator was of sound and disposing mind and memory. Second. That the execution of said paper, alleged to be the last will and testament of James Steadman, deceased, was procured to be executed by duress, imposition, and undue influence, except so much thereof as bequeathed to the wife of the testator, Louisa Steadman, the residue of his personal property and the use of his real estate for her life.

The court below entered judgment on this verdict. [6]

The assignments of error specified:   [1, 2] The admission of evidence; [3, 4] the answer to the defendant's points; [5] the portion of the charge included in brackets; and [6] the entry of judgment on the verdict.

*D. I. Ball* and *C. C. Thompson,* for plaintiff in error.—The transaction, the admission of testimony concerning which is complained of in the first assignment of error, took place five or six years before the execution of the will. The other transaction occurred over a year before the will was executed. Neither of them had the slightest reference to this or any other will. A will was not in the mind of the father, mother, or the son, at the time of either transaction.

It would not be competent to show general bad treatment. McMahon v. Ryan, 20 Pa. 329 ; Taylor v. Saurman, 110 Pa. 8, 1 Atl. 40.

The undue influence which will destroy a will must be nothing less than such as subjugates the mind of the testator to the will of the person operating it, so as to make it the act of the latter person instead of the testator.   Thompson v. Kyner, 65 Pa. 368; Tawney v. Long, 76 Pa. 106; Stokes v. Miller, 10 W. N. C. 241.

If the fraud or undue influence affects the whole will, then no part of it can stand.   Florey v. Florey, 24 Ala. 241; Redf. Wills, ed. 1874, p. 521.

*Charles H. Noyes, Watson D. Hinckley, Charles W. Stone,* and *William E. Rice,* for defendant in error.—It is essential to a good testament that the mind of the testator in the making of it be free, and not moved by fear, fraud, or undue flattery; and therefore if a man by occasion of some present fear, or violence, or threatening of future evils, do at the same time, or afterwards, by the same motive (that is, when acting under that influence), make a testament, it is void.  McMahon v. Ryan, 20 Pa. 330.

It must be a present constraint, operative on the mind of the testator in the very act of making the testament.  Threats and violence, or any undue influence, long past and gone, and in no way shown to be connected with the testamentary act, are not evidence to impeach a will.  Ibid.; Tawney v. Long, 76 Pa. 106.

The intrinsic evidence of the will itself, arising from the unreasonableness or injustice of its provisions, taking into view the state of the testator's property, family, and the claims of the particular individuals, is competent and proper for the consideration of the jury.  Patterson v. Patterson, 6 Serg. & R. 56; Bitner v. Bitner, 65 Pa. 362; Hauberger v. Root, 6 Watts & S. 431; Clark v. Fisher, 1 Paige, 171, 19 Am. Dec. 402; 1 Redf. Wills, pp. 521, 522, 524, 527.

The fact that it was unreasonable and unjust was not in itself enough to set it aside, but it was an item to be considered by the jury in connection with the positive evidence of coercion and undue pressure exerted by the plaintiff.  Herster v. Herster, 116 Pa. 612, 11 Atl. 410.

The testimony of the witness objected to was directly connected with the efforts of James, by violence and threats, to overcome his father's intention of giving his brother Willard an equal share.

There can be no doubt that the devise to the wife for life is what the testator willed and intended, and would have made had he been entirely free.  It is in no manner dependent upon the provisions disposing of it after her death.

There may be a case where the alleged undue influence is applicable only to a single independent provision in a will, and that provision may fall, leaving the rest of the will to stand. Redf. Wills, p. *519, pl. 20 and note; 1 Jarman, Wills, 70, 71; Hall v. Hall, 37 L. J. Prob. N. S. 40; *Re* Welsh, Redf. Wills, p. 238; Florey v. Florey, 24 Ala. 241, Redf. Wills, p. 521; Cuthbertson's Appeal, 97 Pa. 173.

PER CURIAM:

The disposition of this case in the court below was so obviously just and proper that an extended discussion of the assignments of error would be to no purpose. It is, therefore, enough for us to say that none of them can be sustained.

The judgment is affirmed.