[Sac. No. 48.    Department Two.—April 16, 1896.]

IN THE MATTER OF THE ESTATE OF JOSEPH McKIN-NEY, DECEASED.

ESTATES OF DECEASED PERSONS—UNSUCCESSFUL CONTEST OF WILL BEFORE PROBATE—DISCRETION AS TO COSTS.—Where there is an original contest of a will before probate, and prior to the issuance of letters testamentary, the executors have no power to deal with the assets of the estate, or to make any contract for attorneys' fees, and, after the defeat of the contest and issuance of letters, it is discretionary with the court to order the costs to be paid by the parties or out of the assets of the estate, and a refusal to order them paid out of the assets of the estate will not be reversed, where no clear abuse of discretion appears.

ID.—SUCCESSFUL CONTEST AFTER PROBATE—UNDUE INFLUENCE—DISCRETION.—After a will has been admitted to probate, and executors appointed, it is their duty to defend the will, but if the probate is revoked

for undue influence, the costs must be paid by the party resisting the revocation, or out of the property of the decedent, as the court may direct; and when it appears that the undue influence was exerted by one of the executors, it is not an abuse of the discretion of the court to determine that the costs should not be paid by the estate.

APPEAL from an order of the Superior Court of San Joaquin County settling the accounts of executors. J. K. LAW, Judge, Presiding.

The facts are stated in the opinion.

*James A. Louttit*, and *Nicol & Orr*, for Appellants.

Expenses incurred by the executors on a contest or on probate of a will, including a reasonable compensation for the services of attorneys, must be allowed. (Code Civ. Proc., secs. 1616, 1720; *Estate of Chittenden*, 1 Coffey Prob. Dec. 54, 55; *Estate of Chinmark*, Myrick Prob. Rep. 129; *Estate of Marvin*, Myrick Prob. Rep. 164; *Estate of Taylor*, 1 Coffey Prob. Dec. 187; *Abila* v. *Burnett*, 33 Cal. 659; *Estate of Miner*, 46 Cal. 564; *Henry* v. *Superior Court*, 93 Cal. 572; *In re Ogier*, 101 Cal. 385; 40 Am. St. Rep. 61.) Nearly all the expenses were incurred at the first contest; and unless it can be shown that the executors acted in bad faith in probating the will and resisting the false claims of the alleged widow, the order herein, settling their account and disallowing these items, should be reversed. (Code Civ. Proc., secs. 1031, 1332, 1509.) After the will had once been probated it became the duty of the executors, under their trust, to defend the will. (*In re Whetton*, 98 Cal. 204.) And the expenses incurred and obligations assumed in this connection should be allowed, including counsel fees, even though the suit was lost. (*Estate of Fisher*, 1 Coffey Prob. Dec. 101; *In re Miller*, 4 Redf. 304; *Estate of Simmons*, 43 Cal. 543; Code Civ. Proc., sec. 1332; *Estate of Tiffany*, 1 Coffey Prob. Dec. 537.) There is nothing to show that Brichetto ever acted in bad faith in this matter. Unless it can be shown that both executors have acted in bad faith, the innocent should not be

made to suffer with the guilty. (*Willis* v. *Farley*, 2½ Cal. 500.)

*James H. & J. E. Budd*, and *Kile & Plummer*, for Respondent Dudley Sebree.

*Baldwin & Thompson*, for Respondent R. L. Edwards.

The executors ought not to be allowed costs in their attempt to sustain the will, in view of the finding of the jury and court that undue influence was exercised. Suits to sustain such a will are not referred to by section 1616 of the Code of Civil Procedure. Bad faith throws the costs on the executors. (Code Civ. Proc., secs. 1501, 1531.) The judge, in his discretion, taxed the costs as justice required, and no cause has been shown why it should be reversed. (Code Civ. Proc., secs. 1332, 1720; *Saunders* v. *Frost*, 16 Am. Dec. 405, cases in note.)

BELCHER, C.—Joseph McKinney died in San Joaquin county, leaving an estate therein of the value of about forty thousand dollars, and also leaving an alleged last will, in which Douglass Luce and Joseph Brichetto were named as executors. The will was presented for probate, and was contested by a woman who claimed to be the widow of the decedent. The case was tried, and the decision and judgment were against the contestant. The will was then admitted to probate, and the persons named as executors were appointed as such, and entered upon the discharge of their duties. Shortly thereafter another contest was instituted by a brother and other heirs of the decedent upon the ground, among others, that the execution of the will was procured by the undue influence of the said Douglass Luce. The trial upon the issues raised in this contest resulted in an order revoking the probate of the will and setting the same aside. Thereupon a special administrator of the estate was appointed, and the discharged executors were required to render a full account of their receipts and disbursements for and on account of the said estate.

An account was accordingly rendered showing re-
ceipts by the executors of sums of money aggregating
seven thousand five hundred and ninety-seven dollars
and nineteen cents, and disbursements of sums aggre-
gating seven thousand five hundred and eighty-eight
dollars and three cents. To the allowance of numerous
items of these alleged disbursements the special admin-
istrator and one of the brothers of the decedent filed
objections, upon the ground that the said items were
improper charges against the said estate, and were ex-
penses incurred, if incurred at all, in an attempt to
uphold, as the last will and testament of said deceased,
a writing procured by the artifice and undue and fraud-
ulent influence of one of the said executors, and not in
any legitimate or proper administration of the affairs of
said estate.

The matter of settling the account came on regularly
to be heard by the court, and in its order subsequently
made it was recited that "it satisfactorily appearing
that numerous items of expenditure, incurred by the
said executors in attempting to establish a certain paper
writing as the last will and testament of Joseph McKin-
ney, deceased, which paper writing has been adjudged
and declared to be not the last will of said deceased, but
to have been obtained through the undue influence of
at least one of the said executors, it is therefore ordered
that all of the items so expended, being unnecessary
expenditures in the administration of said estate, in the
attempt to establish said paper writing so obtained as
the last will of Joseph McKinney, deceased, be disallowed,
as follows, to wit" (then setting out a list of the items
disallowed, aggregating about two thousand dollars).

The order further recited that "it appearing to the
court that the executors of said estate have employed
attorneys in the administration of said estate, the sum
of five hundred dollars is hereby allowed to said execu-
tors to be paid for such services rendered in the admin-
istration of said estate, but no sum is allowed as
attorney's fees for services rendered by any attorney in

behalf of the executors in either contest of the alleged
will of Joseph McKinney, deceased."

From this order, in so far as it disallowed the speci-
fied items of their account, the said Luce and Brichetto,
appeal.

The items disallowed consisted of witness' fees, jury
fees, reporter's fees for taking down testimony and tran-
scribing his report, and money paid for services as de-
tectives, on the first contest; and witness' fees and a
special shorthand reporter's fees for taking down the
testimony and transcribing his report, on the second
contest; and attorneys' fees for their services from the
commencement of the proceedings to probate the will.

The item for services of detectives was two hundred
dollars, marked paid to White & Dunlap. As to this
item Mr. Brichetto testified that on the first contest they
had a jury trial, and had to employ detectives then to
hunt up the record of the contestant so as to prove that
she was no widow. And Mr. Dunlap testified that the
two hundred dollars was paid to him "for the services
of Officer Carroll and Officer Klench of this city, and a
detective named Howland that they employed in Oak-
land," and that "it was through the services of these
officers and detectives principally that we were able to
secure the testimony to show the falsity of the claim of
the bogus widow."

The item for special shorthand reporter's fees was one
hundred and twenty dollars, marked paid to F. D. Nicol,
and the item for transcribing was thirty-six dollars,
marked paid to Edward Hood. As to the one hundred
and twenty dollars, Mr. Brichetto testified that the money
was paid C. E. Doan, who took the testimony during the
trial of the last contest, twelve days at ten dollars per
day. And Mr. Nicol testified that Mr. Doan's services
were rendered to the estate in taking the testimony:
"He was employed by the executors, by myself and
Mr. Louttit, as attorneys for the executors, for that pur-
pose; we considered his services necessary; we recognized
the fact that the lady reporter was somewhat inexperi-

enced, and, in a contest involving so long a trial, we knew it necessary, on behalf of the estate, to have another reporter whose notes would act as a check in conjunction with the official reporter. Mr. Doan was also used by the attorneys for the contestants during the examination, and was frequently called to read the testimony for them; we found, as we had anticipated, that by reason of inexperience the official reporter along in the trial at times was unable to readily read her notes, and it was really necessary that we should have the assistance that we had by the employment of Mr. Doan." And as to the thirty-two dollars marked paid to Mr. Hood, the witness testified that it was "for the transcription of some testimony ordered by Mr. Louttit, as attorney for the executors."

The items for attorneys' fees were six hundred dollars marked paid to J. A. Louttit, and five hundred dollars marked paid to Nicol & Orr. As to these items it was proved that Mr. Louttit, at the commencement of the probate proceedings, was employed by the executors to act as their attorney in managing the business of the estate, and that he continued to do so up to the end of the last contest; and that Mr. Nicol was employed as an attorney in the case during the first contest, but did not appear therein, but did appear and take part in the last contest; and that from the time of his employment he assisted in transacting the legal business of the estate.

The Code of Civil Procedure contains the following provisions:

"Sec. 1332. The fees and expenses must be paid by the party contesting the validity or probate of the will, if the will in probate is confirmed. If the probate is revoked, the costs must be paid by the party who resisted the revocation, or out of the property of the decedent, as the court directs."

An executor or administrator "shall be allowed all necessary expenses in the care, management, and settlement of the estate, including reasonable fees paid to

attorneys for conducting the necessary proceedings or suits in courts." (Sec. 1616.)

The superior court "may, in its discretion, order costs to be paid by any party to the proceedings, or out of the assets of the estate, as justice may require." (Sec. 1720.)

In *Estate of Simmons*, 43 Cal. 543, it was held that the employment of an attorney for the mere purpose of procuring letters of administration is a contract made in advance of any authority on the part of the client to deal with the assets of the estate in anywise; and, whether the application be successful or not, the estate is not to be charged with the fees of the attorney for the applicant.

In *Henry* v. *Superior Court*, 93 Cal. 569, it appeared that a woman died leaving a last will in which one McKay was named as executor. The will was presented for probate and a special administrator was appointed. Before the day set for hearing a contest was instituted, and thereafter McKay applied to the court for an order, which was granted, directing the special administrator to pay to the attorneys of McKay, out of the funds of the estate in his hands, a sum of money for counsel fees, witness fees, and other expenses to be incurred in the trial of the issues pending. It was said by this court: "It is safe to assume that parties interested as devisees and legatees will always take the necessary steps and provide necessary funds to procure the attendance of witnesses to establish the validity of the will, if it is worthy of probate. Our conclusion is that, until the will has been admitted to probate, the court has no power to appropriate the funds of the estate to aid either the proponent or contestant."

When the first contest in this case was tried the appellants had not been appointed executors of the will, and had no power to deal with the assets of the estate or make any contract with attorneys or otherwise as such. And after they were appointed executors the court was authorized, under section 1720 of the Code of

Civil Procedure, in its discretion, to order the costs to be paid by the parties, or out of the assets of the estate.

The court exercised its discretion and refused to order the costs of the first contest to be paid out of the assets of the estate, and in this we see no such abuse of discretion as would authorize a reversal.

After a will has been admitted to probate and executors appointed, it undoubtedly is their duty to defend and uphold the will. (*In re Whetton*, 98 Cal. 203.)

But by section 1332 of the Code of Civil Procedure, which relates to contests after probate, it is expressly provided that if the probate is revoked the costs must be paid by the party who resisted the revocation, or out of the property of the decedent, as the court directs.

Here the appellants resisted the revocation, and the law made it the duty of the court to determine whether the costs should be paid by them or out of the assets of the estate. The court exercised its discretion and determined that the costs should not be paid by the estate; and, in view of the finding that the will was obtained through the undue influence of one of the executors, we do not think that it can be said that its discretion was abused.

We advise that the order appealed from be affirmed.

Searls, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is affirmed.

McFarland, J., Temple, J., Henshaw, J.