[Sac. No. 808.   Department One. — August 15, 1901.]

In the Matter of the Estate of WILLIAM EDWIN KEITHLEY, Deceased.   ALICIA   KEITHLEY,   Appellant. NELLIE BERNICE KEITHLEY, Executrix, Respondent.

WILL—CONTEST OF PROBATE—SPECIAL VERDICT—ANSWERS TO QUESTIONS—ULTIMATE FACTS—AUTHENTICATION.—Upon a contest of the probate of a will, it is proper for the court to submit to the jury questions relating only to the ultimate facts to be found, covering the issues growing out of the contest; and the embodiment of such questions and the answers thereto as the verdict of the jury, followed by a certificate signed by the foreman, showing that the jury " do find the foregoing facts and verdict," constitutes a special verdict of the jury properly authenticated.

ID.—EVIDENCE—MENTAL CAPACITY OF TESTATOR—QUALIFICATION OF WITNESSES—INTIMATE ACQUAINTANCES—DISCRETION.—The qualification of witnesses, as " intimate acquaintances," to testify to the mental capacity of the testator leaves the question of sufficient acquaintance largely in the discretion of the court; and its ruling thereupon will not be disturbed upon appeal, unless there is a clear abuse of discretion.

ID.—APPEARANCE AND ACTION OF TESTATOR AT PARTICULAR TIME.—Any witness acquainted with the fact may testify as to the appearance,

demeanor, and action of the testator at a particular time, and as to whether, at that time, he acted rationally, or appeared rational to the witness.

ID. — INSTRUCTIONS — PRACTICE. — It is better practice that instructions should not be numerous, and that those given should be as simple and plain as possible, and cover the issues, so that the jury may fully understand them.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. E. E. Gaddis, Judge.

The facts are stated in the opinion of the court.

R. Clark, for Appellant.

Arthur C. Huston, for Respondent.

VAN DYKE, J. — The appeal in this case is from the judgment, entered on the fifth day of March, 1900, admitting the will to probate, in favor of proponent, and also from the order denying contestant's motion for a new trial. The appeal from the judgment not having been taken within time, that branch of the appeal cannot be considered.

Many alleged errors are assigned in the motion for a new trial, but in the argument of appellant's counsel on the appeal denying said motion, stress is laid principally upon three matters alleged as error. These are, — 1. That the special verdict has no validity, from the fact that it was not signed by the jury or its foreman; 2. Errors occurring in the introduction of testimony; 3. Certain instructions given at the request of proponent.

1. At the close of the trial, contestant's attorney submitted certain special issues, which were agreed to by proponent and submitted by the court to the jury, "whereupon [as the record recites] the jury retired to consider the said verdict, and were afterwards returned into court with the verdict in the manner following: —

"VERDICT AND FINDINGS OF THE JURY.

"Was W. E. Keithley, on September 1, 1899, at the time of the making of the will in contest, of sound and disposing mind?

"Answer: 'Yes.'

" Did W. E. Keithley declare to G. W. Dufficey that the will in contest was his will, at the time he signed his name thereto?

" Answer: ' Yes.'

" Did W. E. Keithley declare to Annie G. McDonald that the will in contest was his will, at the time he signed his name thereto?

" Answer: ' Yes.'

" Did W. E. Keithley request G. W. Dufficey to sign his name to the will in contest as a witness?

" Answer: ' Yes.'

" Did W. E. Keithley request Annie G. McDonald to sign her name to the will in contest as a witness thereto?

" Answer: ' Yes.'

" Did G. W. Dufficey sign the will in contest as a witness thereto, in the presence of W. E. Keithley?

" Answer: ' Yes.'

" Did Annie G. McDonald sign the will in contest as a witness thereto, in the presence of W. E. Keithley?

" Answer: ' Yes.'

" We, the jury impaneled to try the above-entitled cause, do find the foregoing facts and verdict.

"S. P. RUSSELL, Foreman."

This constitutes a special verdict: " A special verdict is that by which the jury find the facts only, leaving the judgment to the court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the court but to draw from them conclusions of law." (Code Civ. Proc., sec. 624.) The questions propounded and answered by the jury constitute the ultimate facts to be found, covering the issues growing out of the contest of the probate of the will in question, and together they form a special verdict, and this was signed by the foreman of the jury, as required by law. (Code Civ. Proc., sec. 618.)

2. It is contended by the appellant that the court erred in admitting testimony over contestant's objection, wherein it is claimed certain witnesses were permitted to give their opinion respecting the mental sanity of the testator at the time of making the will, where it did not appear that such witnesses were " intimate acquaintances " of said deceased. The cases

pointed out by appellant's counsel under this head relate to
the testimony of witnesses Spencer, Lizzie Connor, William,
Connor, Eugene Cotty, Miss Igo, and Mary Leonard. From
an examination of Spencer, as shown by the record, it appears
that he was quite intimate with the deceased, and therefore,
under the code provision (Code Civ. Proc., sec. 1870, subd. 10),
was competent to answer the question propounded in reference
to the mental sanity of the testator. The same may be said
in reference to the witness Lizzie Connor, but the question pro-
pounded to her was, simply, how he appeared, compared with
himself when he was well, from a mental standpoint, and she
answered, "He was rational. I did not see any difference in
him, only he was weak from sickness." William Connor saw
him several times at the hospital in Sacramento, and was
asked, "During the times you visited Mr. Keithley there, did
he appear to you rational or irrational? . . .—A. Rational,"
—proponent's counsel stating in answer to objection of con-
testant's counsel, that the testimony was not offered to show
the condition of the mind of the deceased, but as to his appear-
ance. The witness Cotty was quite well acquainted with the
deceased, and was asked as to his condition of mind, compared
with himself prior to his sickness, and answered, "He seemed
to be all right. He seemed rational." The witness Miss Igo
was a nurse at the hospital when Keithley was there, and was
asked, "In all these visits you paid to Mr. Keithley during the
time you saw him there, did he, from a mental standpoint,
appear rational or irrational?" and answered, "Rational."
The witness Miss Leonard was also a nurse at the hospital, and
was asked a similar question, and answered, "I think he was
rational. I never detected anything which indicated to me
that he was not rational." In support of his contention under
this head, appellant relies upon *Estate of Carpenter*, 94 Cal.
414. In reference to that case it is said: " But while that case
discusses and defines what the words 'intimate acquaintance,'
as used in the statute, mean, it does not undertake to prescribe
any measure of proof by which that relationship is to be deter-
mined. And in the nature of things, it would be difficult to
do so." (*People* v. *McCarthy*, 115 Cal. 258.) And, after quot-
ing from the opinion in that case, the court adds: "So it will
be seen that that case leaves the question of competency prac-
tically where it found it,—a question of large discretion in the
trial judge to determine whether the evidence in any instance,

brings the witness within the rule of the statute." It is shown in reference to the witnesses whose answers are objected to, that they had a greater or less degree of intimacy or acquaintance with the deceased, and also, with the exception of the witness Spencer, that the questions did not call for an opinion as to the mental sanity of the deceased, but how he appeared to the witnesses. In *People* v. *McCarthy*, 115 Cal. 258, the court held that it was proper to ask a witness whether the defendant acted rationally or appeared rational at a particular time; and in *People* v. *Arrighini*, 122 Cal. 123, it is said that "a witness may testify to the demeanor of the party, whether melancholy, morose, peevish, irritable, or the opposite, and, no doubt, other mental habits may be testified to,—such as whether he was incoherent, forgetful, or irrational." " Something must be conceded to the intelligence of the witness and his habits of observation, and all these qualifications the trial court can better judge." (*People* v. *Schmitt*, 106 Cal. 52.) " And so it has been held, and wisely, that the trial judge is to be accorded wide discretion and latitude in this respect; and his ruling will not be disturbed, except where the evidence is so lacking as to leave no just room for question that the discretion has been improperly exercised." (*People* v. *McCarthy*, 115 Cal. 258.)

3. Contestant submitted twenty-one instructions to be given to the jury, only two of which were refused and two others modified. On the part of proponent, sixty different instructions were submitted, twenty-three of which were given, a number of which were modified. Among the instructions given at the request of proponent, the appellant contends that some trenched upon the constitutional right of the jury to be the exclusive judges of the credibility of witnesses. A careful examination of these instructions fails to show us that they are subject to appellant's criticism in this respect. In view of the multitude of instructions submitted to the court, it would not be surprising at all if the language of some had been subject to criticism, but, upon the whole, these seem to be fair, and free from legal objection. It may not be amiss here to animadvert upon the practice too frequently indulged, in jury trials, of loading down the case with innumerable instructions. Because they may be found in a form-book on the subject, it does not follow that it is necessary to copy them all in every case, however involved in style they may be or irrelevant to the issues presented. A good case is frequently ruined by such a prac-

tice. The more simply and plainly instructions can be framed and cover the issues, the better the jury will understand them, and the less likely will they be to run counter to some rule of law.

Order appealed from affirmed. Appeal from the judgment dismissed.

Harrison, J., and Garoutte, J., concurred.