[Civ. No. 9137. First Appellate District, Division One.—October 10, 1933.]

In the Matter of the Estate of JOHN L. NELSON, etc., Deceased. CHARLES NELSON et al., Appellants, v. MYRTLE L. SNYFELD, as Executrix, etc., et al., Respondents.

Daniel A. Ryan, Thomas C. Ryan and James W. Harvey for Appellants.

Thomas & Sullivan and Carl W. Anderson for Respondent Myrtle L. Snyfeld.

THE COURT.—This is a contest of the will and codicil thereto of the decedent. The contest was filed by Charles Nelson, a brother, and Arthur Nelson, a nephew of the deceased wife of the testator. The grounds of contest were: 1. Unsoundness of mind; 2. Undue influence exerted upon the testator by the respondent legatee, Myrtle L. Snyfeld; 3. That the will and codicil were not duly executed and attested by the testator and the subscribing witnesses. At the close of contestants' case the proponents moved for a nonsuit, which was denied as to unsoundness of mind and undue influence but was granted as to the claim of want of due execution, there having been no evidence offered on this ground of contest. At the conclusion of the evidence proponents moved for a directed verdict in their favor on each of the two remaining counts, which the court denied. The case was then submitted to the jury which returned its verdict that the testator was of sound and disposing mind when the will and codicil thereto were executed, but that he was at such time acting under the undue influence of proponent Myrtle L. Snyfeld. Proponents thereupon, and before judgment was entered, moved the court for judgment for the proponents, notwithstanding the verdict, which motion was granted, and judgment was thereupon entered accordingly. It is from this judgment that the appeal herein is taken.

The sole question involved is whether or not the trial court erred in directing judgment for the proponents, notwithstanding the verdict in favor of the contestants on the ground of undue influence. If there is any substantial evidence in the record to show that the execution of the will and codicil were not the free and voluntary acts of the testator, but were the result of pressure which overpowered his volition at the time they were executed, the action of the trial court was unauthorized. The contestants urge that there is evidence in the record to support the verdict that the deceased was induced to make the will through the undue influence of the proponent Myrtle L. Snyfeld. We are of a like opinion. There was evidence to show that this proponent was a total stranger to decedent up to December 26, 1929. She met the deceased through her husband, an itinerant peddler, who had become acquainted

with deceased while the husband was engaged in peddling brushes from door to door in Burlingame, where the deceased lived. On the very day she met the deceased, the proponent and her husband moved into his house under an agreement by which they were to pay a stipulated rent and to furnish him board. The testator was at this time about seventy-five years of age. The rent agreed upon was paid for about three months, at the end of which time proponent informed the testator that she was going to move, whereupon, so proponent testified, the deceased agreed to deed his home to her provided she remained with him. Several months later the deed was executed but it was not recorded until after the testator's death. Later, deceased made proponent a gift of an expensive automobile.

The testator executed his will on September 29, 1931, and the codicil thereto about one month later. Under the terms of the will practically the entire estate of decedent, consisting of corporate stocks of the value of $4,500 and real estate of the value of $6,000, was left to proponent, to the exclusion of his relatives. After deceased was stricken with his last illness and while very weak mentally and physically, proponent received from him a general power of attorney. At this time he was unable to sign his name to the instrument and could only make a cross thereon. Upon receiving this instrument, proponent immediately called at the bank where the testator had a safety-deposit box and attempted to gain access thereto, but the bank refused to honor the power of attorney until the testator personally authorized such act. One of the witnesses to the power of attorney at first refused to sign the instrument as he was of the impression that the testator did not understand the effect of what he was doing. There was also testimony to show that proponent was very active in arranging appointments with testator's attorney to have both the will and codicil executed, and brought him to the attorney's office for such purpose. By the terms of the will bequests of one dollar each were left to a nephew and the children of a deceased nephew and to a niece of testator's wife. In the codicil executed one month later, the dollar bequest to his deceased wife's niece was changed to provide for her a legacy of $250. In this connection there was evidence to show that the proponent had been active in procuring this change in

the will. As indicating her possible reason for desiring this change, it appeared that after the death of the testator proponent visited the niece at her home and offered her, so the niece testified, $250 of her own money if she would support the will. There was also evidence showing that the testator had a strong affection for his younger brother Charles, one of the contestants. For nearly fifty years they had lived close together and had never had a quarrel, and Charles had frequently given the deceased employment and had been his constant advisor. Arthur Nelson, the other contestant, was the nephew of Mrs. John L. Nelson, the deceased wife of the testator. Arthur Nelson was raised by the testator and his wife from infancy, and christened under the name of Nelson. The relations between him and the testator were of the most affectionate nature. He gave all his earnings to testator's wife and up to the time of his marriage he lived with them, and after the birth of a son he again lived with them. The son was named after the deceased who thought considerable of him, and promised on several occasions to make provision for him. After the death of testator's wife, Arthur Nelson and his wife continued to live with the testator for three years and they paid all the family bills. When the testator suffered a stroke he was nursed through this serious illness by Mrs. Arthur Nelson. Other evidence shows that the will was at variance with the testamentary intentions of the decedent as declared by him both before and after the execution thereof. All these facts taken together were sufficient to support the verdict of the jury. The fact that the deceased was of an advanced age and in a weakened condition, both physically and mentally, afforded the proponent an opportunity to control his testamentary act, and is an important factor in determining whether or not the will was his free act or an instrument procured by undue influence. (*Estate of Motz,* 136 Cal. 558 [69 Pac. 294].) So, also, was the activity of proponent in taking testator to an attorney's office for the purpose of having his will executed, a potent circumstance. (*Estate of Welch,* 6 Cal. App. 44 [91 Pac. 336].) Then, too, the relations between proponent and the decedent afforded her an opportunity to control the testamentary act. While none of these and the other circumstances standing alone might have the effect of creating a

presumption against the validity of the will, their probative force in combination was to impose upon proponents the obligation of presenting evidence of volition, and to make the question of undue influence one of fact for the jury's determination. (*Estate of Graves,* 202 Cal. 258, 262 [259 Pac. 935]; *Estate of Baird,* 176 Cal. 381 [168 Pac. 561]; *Estate of Gallo,* 61 Cal. App. 163 [214 Pac. 496].)

■ Respondents rely upon the testimony of the attorney who drew the will and his clerk who witnessed it as showing testamentary power in the deceased. This evidence merely raised a conflict, and the jury was free to reject it. (*Estate of McDonald,* 191 Cal. 161 [215 Pac. 545].) Questions involving motives and inferences to be deduced from facts and circumstances, are, within reasonable bounds, exclusively within the province of the jury. (*Estate of Maescher,* 78 Cal. App. 189 [248 Pac. 537].)

Under all the facts and circumstances it cannot be said that the evidence did not support the finding of the jury. We conclude, therefore, that the trial court committed error in granting the motion for judgment notwithstanding the verdict. The order admitting the will to probate is therefore reversed, and it is ordered that judgment be rendered rejecting the will in accordance with the verdict of the jury.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 9, 1933, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 1, 1933.