[Civ. No. 2907.   Fourth Appellate District.—February 13, 1941.]

In the Matter of the Estate of ELLA M. WEBSTER, Deceased. JAMES L. CRANE et al., Appellants, v. YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF SAN DIEGO, CALIFORNIA (a Corporation), et al., Respondents.

8

Arthur F. H. Wright for Appellants.

Gray, Cary, Ames & Driscoll and John M. Cranston for Respondents.

GRIFFIN, J.—Appellants James L. Crane and Annette M. Crane, husband and wife, became acquainted with Ella M. Webster, deceased, a short time before or during the year 1933. At that time Ella M. Webster was a widow, crippled, and approximately 81 years of age. The meeting of the parties was occasioned by the rental of a flat owned by the deceased to the appellants herein, which flat was situated across a vacant lot from the home in which Ella M. Webster was then living. Friendship developed between the parties and appellant Annette M. Crane spent considerable time visiting and nursing Ella M. Webster because of her ill health and age.

In November, 1933, Mr. Crane determined that Mrs. Webster was "incompetent and required a guardian for her person and estate". In January, 1934, he filed his verified petition for appointment of himself as her guardian, through his attorney, A, reciting that "she is not now capable of taking care of herself or her property or effects, but that by reason of old age and the infirmities of such age is unable unassisted to properly manage or care for herself or her property and by reason thereof is likely to be deceived or imposed on by artful and imposing persons". He secured from her and attached to the petition a written statement signed by her which recites: " . . . by reason of my advanced years and weak physical condition, I am unable to properly care for my person and estate and request and petition the court that James L. Crane, an intimate friend and neighbor of mine, . . . be appointed as the guardian of my person and estate".

In February, 1934, Crane was appointed her legal guardian and took over the management of her property consist-

ing of real and personal property of the approximate value of $45,000. On February 29, 1932, Ella M. Webster made her will devising certain real property and one-half of her bonds and securities to the Young Women's Christian Association of San Diego, and certain other real property, and one-half of her bonds and securities to the San Diego Children's Home, with the proviso that if either of the bequests should fail by virtue of the provisions of section 41 of the Probate Code the same should go to Mrs. H. P. Davison and Miss Mary Belle Williams in equal shares. R. F. Ruth, Jr., and Evan H. Curtiss were nominated as joint executors.

This will was prepared by Mrs. Webster's own attorney, B. The record discloses that Ruth, a bond salesman who had advised with Mrs. Webster as to investments, and who was one of the executors nominated in the will, about October, 1933, procured another attorney, C, to draw a will for Mrs. Webster, in which he was named executor and was the beneficiary. Mr. Crane had knowledge of this fact. The record indicates that Ruth subsequently misappropriated some of Mrs. Webster's bonds or stock and an action was threatened against his company. A compromise was effected. Just prior to Mr. Crane's appointment as guardian, Mrs. Crane consulted attorney B in reference to making a new will for Mrs. Webster, claiming that she felt "terribly tormented about this will that he had drawn . . . and it wasn't the way she wanted it, and of course that was affecting her physical condition". Immediately thereafter attorney B was present at the Webster home with a Dr. Carter, her regular physician, at which time a proposed will was read. The doctor was asked if he would attest the will. After propounding a few questions as to whether she knew what disposition was being made of her property he refused to sign as a witness because she was not "sufficiently clear on the subject". Nothing further was done at that time.

From February 8, 1934, to January 18, 1939, Mrs. Crane was employed by Mr. Crane as nurse for Mrs. Webster at $15 per week, and subsequently he increased her salary. Mr. Crane also received compensation for acting as guardian during the same period. Shortly after Mr. Crane's appointment as guardian he again consulted attorney A about making a new will for Mrs. Webster. Attorney A informed him "that he did not feel that he could prepare a will for Mrs.

Webster, because he had knowledge of the fact that she had been declared incompetent and did not feel that it would be ethical for him to do it". Through another party Mr. Crane was referred to attorney D. Attorney D visited Mrs. Webster and obtained a statement of her desires. Subsequently Dr. Carter was again called to witness the will prepared. After an examination of Mrs. Webster, Mr. Crane being present, he again refused for the same reason. He found her to be "suffering from senile dementia".

Early in March, 1934, Dr. Andrews, a psychiatrist, who had had a previous interview with Mrs. Webster, was called to her home. Attorney D and Mrs. Crane "and perhaps Mr. Crane" were present. After some interview by the doctor, he decided that Mrs. Webster was competent to execute a will although he had no memory that she stated that she wanted the Cranes included in the will. Thereupon attorney D and his wife witnessed the will. The Cranes, although not present at the signing of the will, "were right around the house". This will, dated March 28, 1934, provided: (1) That all former wills made by her were revoked; (2) that the Society for Crippled Children for San Diego County be given certain real property; (3) that the San Diego Children's Home Association be given certain other property; (4) a certain portion was given to the Rest Haven Preventorium; (5) to Mrs. Davison $2,000; (6) the residue to go to James L. Crane; and (7) James L. Crane was nominated executor without bond.

On January 2, 1935, Dr. Andrews and attorney D were again approached by appellants to examine and interview Mrs. Webster and make a codicil to her will, changing the residuary legatee thereunder to both Mr. and *Mrs.* Crane. This was done and the codicil was signed and witnessed. Included therein was the following clause: "It has been rumored that another will or codicil subsequent to the one under date of March 28, 1934, has been signed by me. If true, I hereby revoke any such will or will and codicil. . . . " Shortly after the execution of the will dated March 28, 1934, Mrs. Webster was removed from her home to a home owned by appellants and rent therefor was charged against Mrs. Webster's estate for this accommodation.

The evidence shows that friends of Mrs. Webster were unjustly precluded from seeing her on many occasions and that when some of them did gain admission Mrs. Crane remained

in the room with them; that on one occasion Mrs. Crane was called to the phone and Mrs. Webster told the visitor that "I want to get rid of these people and I wish you would help me". Another witness testified that while visiting Mrs. Webster she (Mrs. Webster) said "I am told I signed a paper, but I don't know what was in it. I want to get rid of these people, and how can I do it"? Although conflicting evidence was offered, the voluminous record in this regard clearly indicates that appellants were quite apprehensive that Mrs. Webster's friends might learn of her true condition and conclude that she was under the domination of the appellants. On January 18, 1939, Mrs. Webster died. James L. Crane offered for probate the will bearing date March 28, 1934, and the codicil dated January 2, 1935. On February 17, 1939, Evan H. Curtiss presented for probate the will dated February 29, 1932, and simultaneously the Young Women's Christian Association of San Diego filed opposition to the probate of the will dated March 28, 1934, and the codicil dated January 2, 1935, upon the following grounds: (1) Unsound mind of decedent; (2) improper execution; and (3) undue influence of appellants.

Appellants filed their answer denying the allegations and filed their opposition to the probate of the will of February 29, 1932, upon the ground that said will had been expressly revoked by the will of March 28, 1934, and the codicil of January 2, 1935. To this opposition Evan H. Curtiss filed his answer setting forth in substance the allegations of the opposition to the probate of the will of March 28, 1934, and codicil of January 2, 1935. The contest of the respective wills was tried jointly before a jury, appearances having been made by appellants as proponents of the will dated March 28, 1934, and codicil of January 2, 1935, Young Women's Christian Association of San Diego, as contestants, Rest Haven Preventorium, and Society for Crippled Children for San Diego County, beneficiaries under the will dated March 28, 1934.

The court directed a verdict in favor of appellants and proponents on the first ground of contest, holding that the evidence was insufficient to show that the decedent was not of sound and disposing mind at the time of the execution of the March 28, 1934, will and January 2, 1935, codicil.

The second ground of contest to the opposition to the probate of the will of March 28, 1934, and codicil of January 2,

1935, namely, that the said will and codicil were not executed in the manner or form required by law, was dismissed by contestants. The court thereupon submitted special interrogatories on the sole question of undue influence in the execution of the will dated March 28, 1934, and codicil of January 2, 1935, as follows: (1) Was the will of Ella M. Webster dated March 28, 1934, in whole, made under undue influence? The jury answered in the negative. (2) Was the codicil to the will dated January 2, 1935, in whole, made under undue influence? The answer was in the affirmative. (3) Was the devise to the Society for Crippled Children for San Diego County made under undue influence? The answer was in the negative. (4) Was the devise to San Diego Children's Home Association made under undue influence? The answer was in the negative. (5) Was the devise to Rest Haven Preventorium made under undue influence? The answer was in the negative. (6) Was the devise to Mrs. Hannah P. Davison made under undue influence? The answer was in the negative. (7) Was that portion of the will which leaves the residue of the estate to James L. Crane obtained under undue influence? The answer was in the affirmative. (8) Was that portion of the codicil changing the bequest of the residue from James L. Crane to James L. Crane and Annette M. Crane, his wife, obtained under undue influence? The answer was in the affirmative. It should be noted that the trial court failed to submit to the jury the question whether the revoking clause and the clause appointing Crane executor were obtained under undue influence.

Upon the answers returned by the jury the court rendered judgment in favor of the contestant Young Women's Christian Association of San Diego and admitted the will dated February 29, 1932, to probate and admitted the will of March 28, 1934, omitting therefrom the clause designating appellant James L. Crane as residuary legatee, and further omitting the clause designating the appellant James L. Crane as executor without bond, and upon motion for new trial, in the absence of special interrogatories submitted to a jury, made its finding and amended judgment deleting the revocation clause of the will dated March 28, 1934. The court further denied probate of the codicil dated January 2, 1935, in its entirety. From this judgment, the amended judgment and order deny-

ing judgment notwithstanding the verdict, the appellants have appealed.

It is appellants' contention that the admission to probate of the will dated March 28, 1934, deleting therefrom that portion which leaves the residue of the estate of Ella M. Webster, deceased, to appellant James L. Crane, and the refusal of the court to admit to probate the codicil dated January 2, 1935, constitutes reversible error; that there is no substantial evidence in the record to support the verdict of the jury, citing *Estate of Valladao,* 31 Cal. App. (2d) 355 [88 Pac. (2d) 187], *Estate of Burns,* 26 Cal. App. (2d) 741 [80 Pac. (2d) 77], *Estate of Kilborn,* 162 Cal. 4 [120 Pac. 762], and *Estate of Donovan,* 114 Cal. App. 228 [299 Pac. 816].

It is further argued that the findings of the trial court on questions which were not submitted to the jury, namely, that the revocatory clause and the clause appointing the executor in the March 28, 1934, will was unauthorized, particularly in view of the fact of the jury's finding that parts of the will were free from the taint of undue influence; that it is impossible to conceive how the jury arrived at the fact that there was no undue influence on certain portions of the will and then allowed the court on the very same evidence to arrive at the conclusion that there was undue influence exercised in other portions of the same will; that a revocatory clause in a will is as much a part of the will as any other portion thereof; that the provisions of the will are unseverable; that the will should have been admitted in its entirety or rejected in its entirety; that the revocatory clause in the will of March 28, 1934, must stand and therefore the will of February 29, 1932, was thereby revoked in its entirety; and that the decision of the trial court must be reversed.

■ First considering the sufficiency of the evidence to justify the verdict, appellants concede that Crane, during all of the time in question, was sustaining a confidential relationship to the testatrix, but claim that the presumption of undue influence does not apply because there is lacking evidence of activity on the part of appellants in procuring the execution of the will and that they unduly profited thereby, citing *Estate of Baird,* 176 Cal. 381, 384 [168 Pac. 561], and *Estate of Holloway,* 195. Cal. 711, 723 [235 Pac. 1012]. We are convinced that there is little merit to this contention for the evidence conclusively shows not only activity on the part

of Mr. Crane but also Mrs. Crane, in procuring the execution of the will and the codicil. It also shows that in addition to receiving adequate compensation for the services performed as guardian and as nurse, they, under the terms of the will, would benefit to the extent of approximately $20,000. Although the evidence is conflicting, we are convinced, from reading the record, that there are sufficient circumstances surrounding the execution of the will and codicil, if believed by the jury, to justify the conclusion reached by it in reference thereto. (*Estate of Witt*, 198 Cal. 407 [245 Pac. 197]; *Estate of Johnson*, 31 Cal. App. (2d) 251 [87 Pac. (2d) 900]; *Olson* v. *Washington*, 18 Cal. App. (2d) 85 [63 Pac. (2d) 304]; sec. 2235, Civ. Code; *Estate of Nelson*, 134 Cal. App. 561 [25 Pac. (2d) 871]; *Estate of Ramey*, 62 Cal. App. 413 [217 Pac. 135]; *Estate of Gallo*, 61 Cal. App. 163 [214 Pac. 496]; *Estate of Arnold*, 147 Cal. 583 [82 Pac. 252]; *Estate of Snowball*, 157 Cal. 301 [107 Pac. 598].)

In *Estate of Graves*, 202 Cal. 258 [259 Pac. 935], it is said: " . . . Three well-established facts, among others, which are recognized as being indicative of undue influence, or a subversion of the decedent's volition, stand out clearly in the record: The relations between appellant and the decedent afforded to appellant an opportunity to control the testamentary act; the decedent's condition was such as to permit of a subversion of her freedom of will; the appellant was active in procuring the instrument to be executed. In addition, appellant unduly profited as beneficiary under the will. While none of these circumstances, standing alone, has the effect of creating a presumption against the validity of the instrument, their probative force, in combination, is to impose upon the proponent the obligation of presenting evidence of volition, and to make the question as to undue influence one of fact for the jury's determination."

The same "three well-established facts" upon which the court relied in the Graves case also stand out clearly in the record in the instant case. Appellants had an opportunity to control the testamentary act; Mrs. Webster's condition was such "as to permit of a subversion of her freedom of will"; and appellants were active in procuring the instruments to be executed. In addition they unduly profited thereby. In the language of the court all these factors taken together "make the question as to the undue influence one of

fact for the jury's determination''. The jury having determined this question in favor of respondents, that determination should not be set aside. Either the evidence presented by the record or the presumption of undue influence, standing alone, would support the verdict of the jury. However, respondents need not rely upon one factor to the exclusion of the other. Each is strengthened and reinforced by the other, and the two together are without question sufficient to uphold the judgment that the appellants procured the residuary clause of the 1934 will and the entire 1935 codicil thereto by undue influence. The propriety of the court's holding that the evidence was insufficient to show that the deceased was of unsound mind and directing a verdict in accordance therewith is not questioned. We will therefore not give consideration to it. We must, therefore, conclude that the order denying the codicil dated January 2, 1935, to probate was proper. If the trial court was authorized, without the aid of the jury, to make the determination that the revocation clause in the will dated March 28, 1934, and also that the clause appointing Crane executor of the will were made under undue influence, then the order admitting the will of February 29, 1932, to probate and appointing the executors named therein was also proper if the remaining provisions of the will of March 28, 1934, were not inconsistent therewith. (*Estate of Mallon,* 28 Cal. App. (2d) 106 [81 Pac. (2d) 992]; *Estate of Schnoor,* 4 Cal. (2d) 590 [51 Pac. (2d) 424]; *Estate of Iburg,* 196 Cal. 333 [238 Pac. 74]; *Estate of Smith,* 140 Cal. App. 508 [35 Pac. (2d) 335].)

If this determination of the trial court was proper, the appellants would no longer have any interest in the distribution made under the will of February 29, 1932, and the remaining clauses of the will of March 28, 1934. In 2 Cal. Jur., page 212, section 54, it is said:

''If a party has no interest in the property in dispute, he cannot be aggrieved by any disposition the court may make of the property, even where the court gives it to the wrong party, and an appeal taken by him will be dismissed.'' (See, also, *Estate of Zollikofer,* 167 Cal. 196, 197, 198 [138 Pac. 995]; *Estate of Land,* 166 Cal. 538 [137 Pac. 246].)

The general rule is that if the whole will is the result of the presence of undue influence, probate of the whole will must be refused. If only a part of it is affected by un-

due influence, that part may be rejected as void, but the remainder, which is the outcome of the free action of the testator, ought to be sustained if it is not inconsistent and can be separated from the part which is invalid, and should be admitted to probate. (Underhill on Wills, vol. 1, sec. 159, p. 223; Schouler on Wills and Administration, Part 2, sec. 248, p. 124; secs. 22 and 72, Prob. Code; *Steadman* v. *Steadman*, [Pa. S. Ct.] 10 Sadler, 539, 14 Atl. 406; *Estate of Carson*, 184 Cal. 437, 441 [194 Pac. 5, 17 A. L. R. 239].)

█ In support of the court's independent finding respondents argue (1) that it was authorized to so find because "the finding of the jury that the residuary clause was obtained by undue influence is a finding that the appellants were active—at least to some extent—in obtaining the will. This is the only 'fact' which it is necessary to know in order to declare as a matter of law that the revocation clause and the clause appointing Crane executor were obtained by undue influence". (2) That from the facts established by the evidence and the finding of undue influence reached by the jury, as to the residuary clause, there arose an inference of fact and from it there flowed the right of the court to draw the ultimate conclusion of law reached. (Sec. 624, Code Civ. Proc.; *Estate of Keithley*, 134 Cal. 9 [66 Pac. 5].)

We are not in accord with this contention. The verdict of the jury finding that the appellants used undue influence in reference to the residuary clause of the will would not necessarily be any determination that they used undue influence in respect to the provisions of the will revoking the former will and appointing Crane executor where the jury also found that certain provisions of the same will were not made under their undue influence. In fact the evidence rather strongly indicates it was the intention of Mrs. Webster to change the joint executor Ruth, named in the first will, because of his claimed misconduct and claimed misappropriation. There was highly conflicting evidence as to the question of undue influence in the making of the will and all of its provisions. Assuming there was a presumption of undue influence remaining in the case, it merely created a conflict which should have been determined by the jury. (*Duehren* v. *Stewart*, 39 Cal. App. (2d) 201 [102 Pac. (2d) 784].) We feel impelled to hold that the trial court should have submitted to the jury the question of whether the revocation

clause and the clause appointing Crane executor was made under undue influence before a proper judgment could have been made admitting the 1932 will or denying portions of the 1934 will to probate. In fact, it was appellants' main contention and ground of contest that the second will revoked the former will.

In view of this conclusion, these questions presented by the pleadings have not been properly determined and seriously affect the validity of the orders admitting the 1932 will to probate and denying admission to probate of a portion of the 1934 will and the order appointing an executor. A revocation clause in a will is as much a part of the will as any other portion thereof and the trial court had no right in law or in fact to change the will to its liking as indicated by its statement: "It is my belief that this revoking clause was put in there without a great deal of thought on the part of Ella M. Webster. . . . "

In *Estate of Thompson,* 185 Cal. 763 [198 Pac. 795], the following may be found:

"These cases at least make it clear that the revoking clause of a will is a part of the will, and is to be treated as such . . . " (See, also, *Estate of Smith, supra.*)

Respondents' second contention is equally untenable. The findings of the jury upon the issues submitted to them stand the same as the findings of fact made by the court in a civil action, i. e., when we are brought to the consideration of their sufficiency to support the judgment rendered. In the one case the jury makes the findings, and in the other the court makes them.

In *Estate of Benton,* 131 Cal. 472 [63 Pac. 775], the case of *Bull* v. *Bray,* 89 Cal. 286 [26 Pac. 873, 13 L. R. A. 576], is quoted to the effect that:

" 'Where probative facts only are found, yet if the ultimate fact flows as a necessary conclusion therefrom, the findings are sufficient; but in order to warrant the appellate court in inferring an ultimate fact from probative facts, it must inevitably follow from the facts found.' So in a case where the probate of a will is contested, if the issues presented to the jury involve simply probative facts, then, to justify the court in rejecting the probate of the will, the ultimate fact of fraud, undue influence, or mental incompetency must appear conclusively from the probative facts found. In other

words, the trial court may not indulge in inferences of fact in order to support the judgment it makes."

■ The diversified findings of the jury and the evidence presented preclude a conclusion, as a matter of law, that the revocatory clause and the clause appointing Crane executor were made under undue influence. The omission or failure of the court to submit those issues to the jury was prejudicial error. (*Estate of Hewitt*, 63 Cal. App. 440 [218 Pac. 778].) The trial of such issues "must be tried by a jury, unless a jury is waived". (Sec. 371, Prob. Code.) And the "jury must return a special verdict upon the issues submitted to them by the court; and upon the verdict, . . . the court must render judgment, . . . " (Sec. 373, Prob. Code.)

It is with reluctance that we have reached the conclusion that we are required by law to reverse portions of the judgment, because they are so obviously correct in fact. They are strongly supported by the presumptions as well as the testimony of disinterested witnesses. The residuary clause of the 1934 will making Crane the residuary beneficiary is so closely related to the clause revoking the 1932 will and the clause appointing Crane executor of the 1934 will that it does not seem possible that any jury would find the first clause void because of undue influence and the other two clauses valid because made voluntarily and free from undue influence or that a trial judge would let any such inconsistent verdict stand should one be returned. However, we have been unable to discover any lawful ground upon which the judgment can be affirmed as it now stands.

We see no reason for a retrial of the issues heretofore found by the jury. ■ The attempted appeal from the order denying the motion for judgment notwithstanding the verdict, not being an appealable order under section 1240 of the Probate Code, is dismissed. (*Estate of Patterson*, 220 Cal. 370 [31 Pac. (2d) 197]; *Estate of Armstrong*, 8 Cal. (2d) 204 [64 Pac. (2d) 1093]; *In re Walkerly*, 94 Cal. 352 [29 Pac. 719]; *Guardianship of Morro*, 36 Cal. App. (2d) 623 [98 Pac. (2d) 552]; *Estate of O'Dea*, 15 Cal. (2d) 637 [104 Pac. (2d) 368]; *Estate of Wittmeier*, 118 Cal. 255 [50 Pac. 393]; *Estate of Allen*, 175 Cal. 356 [165 Pac. 1011].)

The portion of the judgment of the trial court denying probate of the codicil herein mentioned is affirmed. That portion of the judgment denying admission to probate of that

provision of the will of March 28, 1934, which leaves the residue of the estate to James L. Crane is affirmed. That portion of the judgment admitting to probate the remaining clauses of the 1934 will (excepting therefrom the revocation clause and the clause appointing Crane executor) and those portions of the same will which the jury found were not made under undue influence is affirmed. That portion of the judgment admitting to probate the will dated February 29, 1932, appointing the executor, and denying probate of the two mentioned provisions of the 1934 will relating to the revocatory clause and the clause appointing Crane executor, is reversed with directions to the trial court to present to the jury the sole questions: (1) Was the provision of the will dated March 28, 1934, "revoking any and all other wills and codicils heretofore made and/or executed by me" made under undue influence? (2) Was the provision of the will dated March 28, 1934, nominating James L. Crane executor made under undue influence? If these questions are answered in the affirmative the court may then be authorized to admit the first will to probate, appoint the executors named and deny probate to those additional portions of the will of March 28, 1934, found to be made under undue influence. If answered in the negative, the court should then make an appropriate order and judgment in accordance with the combined findings of the jury. Each party to pay its own costs on appeal.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied March 12, 1941, and the following opinion then rendered:

THE COURT.—Appellants herein petition for a rehearing upon the grounds formerly urged and for the additional claimed reason that if the finding that they were not entitled to take under the clause of the will devising them the residue of the estate becomes final under the order as affirmed by this court, they would no longer have an interest entitling them to maintain the contest. In so far as James L. Crane is concerned, who is named executor in the 1934 will, there has been no proper determination that he is not entitled to serve as such executor.

■ Section 370 of the Probate Code provides that "Any person interested may contest the will . . . " After a will has been admitted to probate and the executor has taken up the administration it becomes the executor's right and duty to protect the interests of the beneficiaries and he has, as such, a right to oppose a contest until final decision. (*Estate of Collins,* 174 Cal. 663 [164 Pac. 1110]; *Estate of Heydenfeldt,* 117 Cal. 551 [49 Pac. 713]; *Estate of Dillon,* 149 Cal. 683 [87 Pac. 379]; *Estate of Langley,* 140 Cal. 126 [73 Pac. 824]; *In re McKinney,* 112 Cal. 447 [44 Pac. 743].) The *duty* of an executor named, before probate, to establish the will and oppose a contest may be questioned. There is no doubt that such a named executor is given such *right.* (*Estate of Higgins,* 158 Cal. 355 [111 Pac. 8]; *Estate of Hite,* 155 Cal. 448, 455 [101 Pac. 448]; 11B Cal. Jur., p. 221, sec. 819.)

■ Respondents contend in their petition for a rehearing that due to the failure of appellants to submit a special interrogatory concerning the revoking clause and the clause appointing the executor, they waived a finding thereon by the jury. This contention was decided adversely to respondents in *Estate of Hewitt,* 63 Cal. App. 440 [218 Pac. 778].

Petitions for rehearing denied.

Appellants' petition for a hearing by the Supreme Court was denied April 4, 1941.