[Civ. No. 323. First Appellate District.—June 24, 1907.]

In the Matter of the Estate of RICHARD R. WELCH, Deceased. MARY ELLEN ASTON, Contestant and Appellant, v. BRIDGET WELCH, Executrix, Respondent.

WILLS—CONTEST—UNDUE INFLUENCE OF WIFE OVER HUSBAND—NONSUIT—EFFECT OF EVIDENCE.—Where a nonsuit was granted in the contest of a will upon petition to revoke the probate thereof, on the ground of undue influence of the wife over the husband, in determining the question whether the case was properly taken from the jury, the evidence introduced by the contestant. must for the purpose of the motion for nonsuit be all considered as true, and must be given its full probative force; and every favorable inference fairly deducible therefrom, and every favorable presumption fairly arising therefrom, must be considered as facts proved in favor of the contestant.

ID.—UNDUE INFLUENCE DEFINED—CONFIDENTIAL RELATION—HUSBAND AND WIFE.—Undue influence is the use by one in whom a confidence is reposed by another, who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage of his weakness of mind, or of his necessities or distress. The relation between husband and wife is confidential; and though it may not of itself raise a presumption of undue influence in the making of a will, it is important in weighing the evidence upon that question.

ID.—FACTS TO BE CONSIDERED.—The question as to undue influence is to be determined by consideration of the relation between the parties, the character, strength and condition of each of them, the circumstances of the case, the application of sound practical sense in relation thereto, the mental and physical condition of the testator, and the provisions of the will itself.

ID.—EVIDENCE SHOWING UNDUE INFLUENCE—IMPROPER NONSUIT.—Where the contestant was a daughter of the deceased and a sole child, who was disinherited by the will, and the evidence showed that deceased was seventy years old, had had a habit of drunkenness, and had been

for some time in feeble health; that his wife was the stronger of the two, mentally, or by will power; that she took charge of the community money, and deposited it in her own name, and superintended the husband's affairs generally; that the mother opposed the daughter's marriage, and never forgave her, and stated that she would receive no part of the estate; that deceased was friendly to the daughter, and often visited her; that the wife for a long time before the husband's death, continually dominated him; that the will gave all the property to the wife for life, and the residue to her distant relatives, who were unknown to the deceased, to the exclusion of all the husband's blood relatives; that the will was made three days before his death, in the wife's presence, and that she afterward declared that she had got the will just the way she wanted it—undue influence was sufficiently shown to warrant a jury in setting aside the will, and a judgment of nonsuit was improper and erroneous.

APPEAL from a judgment of the Superior Court of Santa Cruz County.   Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

H. C. Wyckoff, for Appellant.

The facts established by the appellant's evidence clearly made a *prima facie* case of undue influence, and the judgment of nonsuit is erroneous. (*Estate of Arnold,* 147 Cal. 583, 82 Pac. 252; *Estate of Tibbetts,* 137 Cal. 123, 69 Pac. 978; *Estate of Kendrick,* 130 Cal. 368, 62 Pac. 605; *Ross* v. *Conway,* 52 Cal. 632, 28 Pac. 785; *Woodbury* v. *Woodbury,* 141 Mass. 329, 55 Am. Rep. 479, 5 N. E. 275; *Tyler* v. *Gardiner,* 35 N. Y. 559; *McLaughlin* v. *Davitt,* 63 N. Y. 213; Redfield on Wills, 552, note 32; *Small* v. *Small,* 16 Am. Dec., note, p. 261.)

Charles B. Younger, Jr., and David F. Maher, for Respondent.

The facts do not show undue influence bearing directly on the testamentary act.   General influence is not sufficient. (*Estate of Donovan,* 140 Cal. 390, 393, 394, 73 Pac. 1081; *Estate of McDevitt,* 95 Cal. 17, 33, 30 Pac. 101; *Estate of Calkins,* 112 Cal. 296, 301, 44 Pac. 577; *Estate of Nelson,* 132 Cal. 182, 194, 64 Pac. 294.)

COOPER, P. J.—The last will of deceased was admitted to probate, and Bridget Welch, the widow, appointed executrix thereof. The appellant, Mary Ellen Aston, the daughter of the deceased and the executrix, within the year filed a petition for the revocation of the probate of the will upon the ground of undue influence. The respondent, who is the mother of appellant, filed an answer to the petition, denying the allegations as to undue influence. The case came on for trial upon such issue before the court with a jury. After appellant had introduced her testimony and rested, respondent made a motion for a nonsuit, which was granted, and judgment accordingly entered. The appeal is from the judgment, and presents the question as to the ruling on the nonsuit.

The case presented is entirely different from one in which the lower court has granted a new trial on conflicting or insufficient evidence. Here the jury was a part of the machinery of the trial. It was, in the first place, subject to the revisory power of the court, the judge of the facts. The evidence introduced must, for the purposes of this motion, be all considered as true. It must be given the greatest probative force to which, according to the law of evidence, it is fairly entitled. We must concede to the jury the right, not only to regard all the testimony as absolutely true, but to draw all reasonable inferences therefrom.

In *Estate of Arnold*, 147 Cal. 583, [82 Pac. 252], the rule is thus stated: "In determining whether or not, in a proceeding to contest a will, the evidence produced by the contestants is sufficient to require the submission of the case to the jury, the same rules apply as in civil cases. Every favorable inference fairly deducible, and every favorable presumption fairly arising, from the evidence produced must be considered as facts proved in favor of the contestants. Where evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the court must take the view most favorable to the contestants. All the evidence in favor of the contestants must be taken as true, and if contradictory evidence has been given it must be disregarded. If there is any substantial evidence tending to prove in favor of contestants all the facts necessary to make out their case, they are entitled to have the case go to the jury for a verdict on the merits."

With the above rule in mind, we will briefly examine the evidence tending to prove that the will was procured by undue influence, or, in other words, that it was not the free and voluntary act of the deceased.

Undue influence has been defined by our court to be the use, by one in whom a confidence is reposed by another, who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage of his weakness of mind, or of his necessities or distress. (*Dolliver* v. *Dolliver*, 94 Cal. 646, [30 Pac. 4].)

It must be borne in mind that the undue influence is alleged to have been by the wife, and the relation between husband and wife is confidential. While such confidential relation does not, perhaps, of itself, in this state, raise a presumption of undue influence in regard to making a will, yet it is important in weighing the evidence in all cases of this character; in fact, it has been held in some jurisdictions that there is a presumption of undue influence in such cases when such confidential relations exist. The question as to the boundary of legitimate influence must be determined by consideration of the relation between the parties, the character, strength and condition of each of them, the circumstances of the case, and the application of sound practical sense to the facts of each given case. The mental and physical condition of the testator, and the provisions of the will itself, may be considered.

The deceased was seventy years old, and during the last few years of his life was in the habit of using intoxicating liquors at times to excess. He had been in feeble health for some time. The respondent appears to have been the stronger of the two, either mentally or by force of her will power. She took charge of the money of the community, deposited it in banks in her own name, and superintended the affairs generally. The appellant was the only living child, and there were no grandchildren. She married Joseph F. Aston in December, 1882, and has ever since lived with him, but they have no children. The mother opposed the marriage of her daughter to Aston, would not consent to it, and stated that if she married Aston he would never get any of the property. She never forgave the daughter for marrying Aston. The deceased was always friendly with his daughter, and often visited her at her home. The will gave the property—quite a little estate—to the respondent for life, making her executrix

without bonds, with remainder to appellant for life, and in case of her death without issue "all of my said property shall go to the heirs of my said beloved wife." Deceased did not know his wife's relatives, who they were, nor where they resided. The appellant testified that during their married life and up to the time of her father's death, her mother controlled him in everything; that her mother insisted upon, and her father did, turn over all the money he earned and all rents to her; that her mother told him what to do and how to do it; that some four or five years before his death he sold some property in Santa Cruz for about $2,400, and her mother deposited the money in the Pajaro Valley Bank in her name; that on an occasion when visiting her father, and when her father was kissing her, the mother told her that she came too often; that her mother would always be present when she visited her father; that her father had blood relations living, and that two of his nephews visited him at his home in Watsonville. The witness Romine, who was a tenant of deceased, testified that when he paid his rent the respondent would reach over and take it, and on one occasion she grabbed the money from deceased; that respondent would always direct how the work should be done on the place; that deceased asked the witness at one time when deceased sat down to rest not to mention it to respondent; that on one occasion, when deceased borrowed three dollars of witness, he asked him not to mention it to respondent. The witness McCallum testified that a short time before the death of deceased the respondent told witness that she was very anxious that her husband should make his will, and in the same conversation the respondent said she did not wish Mr. Aston to get a dollar. The witness Murphy testified that she was at the Welch home a short time before his death; that Mrs. Welch said he was in a very bad condition, and expressed a desire that he should arrange his business; that in the conversation Mrs. Welch said she wanted control of the property during her life, and then to have it go to her daughter, and then to her people, and used the expression, "If it is not that way I will not have it"; that on one occasion deceased came into the home of witness, and asked for a pen and ink, stating that he wanted to sign a note for a saloon bill, but did not want his wife to know about it.

Respondent was called as a witness for appellant, and testified that deceased never saw any of her relations, and that

none of them ever visited at her home. When asked if she was present when the will was signed she answered, ''I certainly was when that will was signed.'' When asked by her own attorney (Mr. Maher) in cross-examination to state what occurred at the time of making the will, the respondent answered: ''You drew the will out and he signed it, after he signed you read it twice to him, and he asked me, 'Are you satisfied with the will, mamma?' '' When respondent was asked if she knew beforehand what was going to be put in the will, she said that she never heard that he was going to make a will till three hours before; ''I was as innocent as a child in the cradle, he said when Mr. Maher read it.'' When asked if she suggested leaving the property to her relatives she answered, ''Oh, no, no, no; I never spoke to him about them.''

If deceased never saw any of his wife's relatives, and she never spoke to him about them, or about making the will, it might have appeared to the jury a little singular that the fee of the property should be left to her relatives.

The will was made three days before the death of the deceased. The witness Mary Aston testified that the deceased and respondent stopped at her place of business in the afternoon after the will had been made, and respondent told witness about the will having been made and ''he had it fixed to suit her.''

The witness Faustino testified that Mr. and Mrs. Welch stopped at his store about 5 o'clock in the afternoon of the day the will was drawn; that deceased came up to the counter, put his elbow on the counter, and laid his head on his hand, and witness gave him a little wine. That Mrs. Welch told witness about the will having been made and said, ''I got the will just the way I wanted it.''

The appellant testified that she was at the home of her parents on the evening of January 27th, just after the will had been made; that nothing was said to her about a will in any way; that she heard a part of an expression made by her mother to her father, which was ''don't tell''; that she did not hear of the making of the will until after the death of her father, which occurred January 30, 1904.

About three weeks before his death the testator had a serious attack of neuralgia of the heart, and could not put on his shoes without assistance. No disinterested party appears to

6 Cal. App.—4

have been present when the will was executed. Deceased does not appear to have had any but the most affectionate feeling for his daughter. While feeble and near dissolution he went with the respondent to the lawyer's office, and was with her and in her presence when the will was executed. Who can say as matter of law that the act was the free and voluntary act of deceased under the circumstances? When the respondent said that the will was as she desired, might not the jury infer and find from all the evidence that it was in fact the will of respondent, acting through the signature of a feeble, dying old man? In a case like this, where a will is made by one in feeble health, just before death, in the hearing and presence of a person of dominating mind, and to suit the interests and purposes of such person, courts and juries should carefully scrutinize every act and circumstance in connection with the matter. In many cases it is utterly impossible to prove the exercise of the influence directly upon the testamentary act, but this is not necessary. The question in all cases is as to whether or not such influence produced the act. It may have been the result of a long course of conduct, fear or persuasion. A party exerting such influence would not take along witnesses to prove that she had no such influence. Such influence has been exerted in many cases where the party whose influence produced the act was not present at the making of the will. The fact that such a party was present, both in going to, remaining in and returning from the lawyer's office, is certainly a very potent circumstance.

In *Estate of Arnold*, 147 Cal. 583, [82 Pac. 252], the order granting a nonsuit in a will contest was reversed, although the facts and circumstances tending to show undue influence were not of a convincing nature. The court said: "There were circumstances from which it might have been inferred that Leonard had, by these means, obtained great control over the mind and actions of the testatrix, and that he was acting in bad faith for the purpose of procuring the new will to be made in order to supplant Rosenheim and promote his own advantage. Some of the evidence, it is true, was capable of a different construction, and there was little, if any, direct evidence as to the motives of Leonard, or as to the actual operation of the undue influence. If a jury had, upon the evidence given, found in favor of the disputed will, we might not be disposed to disturb the verdict. Questions involving mo-

tives, and inferences to be deduced from circumstances, are, within reasonable bounds, exclusively within the province of the jury, or the trial court when sitting without a jury, and under the rules regarding the granting of a nonsuit, they must all be resolved so far as possible in favor of contestants. It would not be unreasonable to conclude upon all the facts and evidence before the jury that the will in question was not the natural result of the uncontrolled will of Mrs. Arnold, but the direct result of the fears exerted, false beliefs engendered, and sinister influences exercised over her to that end by William H. Leonard. In such case it is error to grant a nonsuit.''

It certainly would not be unreasonable to conclude, upon all the facts and circumstances before the jury in this case, that the will was not the natural result of the uncontrolled mind of the old man Welch.

In *Estate of Tibbetts,* 137 Cal. 123, [69 Pac. 978], the verdict of a jury, finding that the will of deceased was the result of undue influence, was upheld. In that case the mother of the testatrix was unfriendly to the contestant, and went with her daughter, the testatrix, to have the will signed, but gave no directions as to its terms at the time. The court said: ''After mature consideration of the case at bar we have reached the conclusion that the evidence was not so entirely insufficient to support the finding of undue influence as to warrant us in disturbing the verdict.''

In *Estate of Kendrick,* 130 Cal. 360, [62 Pac. 605], it was held that the evidence was sufficient to uphold the verdict of the jury that the will was procured by undue influence. The evidence did not show that the influence was exerted at the very time of the making of the will, but that whispered conversations had occurred between the deceased and her niece. The court, after referring to the facts, and the fact that at the conclusion of the conversations the deceased seemed to have put herself unreservedly in the hands of her niece, and to have been dominated by her, said: ''These facts and circumstances, taken with the admittedly mental and physical condition of the testatrix, we think must be held sufficient to justify the verdict of the jury.''

In the case at bar, the facts that the deceased was feeble, and somewhat addicted to the use of intoxicating liquor; that he was dominated by the respondent; that he made his will

just three days before he died; that respondent was with him at the time and the will was made in her favor; that respondent said to third parties that she had the will to suit her; that deceased left the fee of the real estate to his wife's relatives whom he did not know and had never seen, to the exclusion not only of his own relatives but to the exclusion of his only daughter; that respondent entertained a strong dislike to the husband of the daughter; that deceased had always been friendly to the daughter and her husband; that the daughter was not spoken to about the will, and respondent desired to keep the fact of its having been made from the daughter—in our opinion would amply sustain a verdict finding that the will was produced by undue influence.

The judgment is reversed.

Hall, J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 24, 1907, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 23, 1907.