[L. A. No. 9122. In Bank.—December 29, 1926.]

In the Matter of the Estate of D. K. SMITH, Deceased. BARBARA M. SMITH, Appellant, v. JOHN E. SPAULDING, Respondent.

[1] Estates of Deceased Persons—Wills—Testamentary Capacity —Evidence.—The actual mental condition of the decedent at the time of the execution of his will is the question to be determined upon a contest of the will based on his alleged incompetency, and evidence tending to show unsoundness of mind, either before or after the execution of the will, is important only in so far as it tends to show mental condition at the time of the execution of the will; and to overcome the presumption of sanity the contestant

---

1. See 26 Cal. Jur. 635.

must show affirmatively and by a preponderance of the evidence that the testator was of unsound mind at the time he executed his will.

[2] ID.—MENTAL DERANGEMENT—CHARACTER OF.—Mental derangement sufficient to invalidate a will must be insanity in one of two forms: (1) insanity of such broad character as to establish mental incompentency generally, or (2) some specific and narrower form of insanity under which the testator is the victim of some hallucination or delusion; and even in the latter class of cases the evidence must establish that the will itself was the creature or product of such hallucination or delusion.

[3] ID.—TESTAMENTARY CAPACITY—TEST.—A testator is of sound and disposing mind and memory if, at the time of making his will, he has sufficient mental capacity to be able to understand the nature of the act he is doing, to understand and recollect the nature and situation of his property and to remember, and understand, his relations to the persons who have claims upon his bounty and whose interests are affected by the provisions of the instrument.

[4] ID.—WILL CONTEST—UNSOUNDNESS OF MIND—UNDUE INFLUENCE—INSUFFICIENCY OF EVIDENCE.—In this will contest it is held that the evidence was not sufficient to establish that the testator was incompetent at the time that he executed his will, or to warrant an inference that he was induced to make the will as the result of the undue influence of the sole beneficiary.

[5] ID. — DEFINITION OF UNDUE INFLUENCE — EVIDENCE. — Undue influence is defined to be the exercise of acts or conduct by one person toward another person by means of which the mind of the latter is subjected to the will of the person seeking to control it, and in order to establish that the will has been executed under undue influence it is necessary to show, not only that such influence has been exercised, but also that it has produced an effect upon the mind of the testator by which the will which he executes is not the expression of his own desires; and the presumption of undue influence is not raised by proof of interest and opportunity alone, but there must be substantial proof of pressure which overpowered the volition of the testator at the time the will was made.

[6] ID.—UNNATURAL WILL—PRESUMPTIONS.—The fact that the will of a testator may be unnatural, unfair, or unjust creates of itself no presumption that the decedent was incompetent or that the instrument was procured by undue influence; nor does it shift the burden of proof to the proponent.

2. See 26 Cal. Jur. 631.
3. See 26 Cal. Jur. 637; 28 R. C. L. 86.
5. See 26 Cal. Jur. 641; 28 R. C. L. 137.
6. See 26 Cal. Jur. 688; 28 R. C. L. 149.

[7] ID.—FAIRNESS AND JUSTNESS OF WILL.—A will disinheriting the widow of the deceased and devising all of the estate to a friend cannot be said to be unfair, unjust, or unnatural, where it is shown that the testator and the sole beneficiary had been intimate friends for many years; that decedent was solicitous of the beneficiary's well-being and had often loaned him money for various purposes; that he had even expressed the desire and willingness to assist the beneficiary in acquiring his own home, and that the beneficiary had cared for the decedent in his last illness; and it further appeared that the decedent and his wife, the contestant, had experienced certain matrimonial difficulties which terminated in the filing of a divorce action by the contestant, which action proved abortive, but the parties had never resumed marital relations thereafter, and the decedent had stated that the contestant had sufficient property in her own name.

[8] ID.—REMARKS OF COURT—LACK OF PREJUDICE.—In this will contest it is held that the contestant was not injured as a result of the trial court's declaration that he was not assisted in the determination of the cause by the testimony of a certain doctor and that the introduction of similar expert testimony would therefore tend to "waste time," the court not having precluded the contestant from introducing further expert testimony; and it is further held that the rulings of the court excluding certain testimony of doctors as being privileged within the provisions of subdivision 4 of section 1881 of the Code of Civil Procedure were correct.

---

(1) 40 **Cyc.**, p. 1016, n. 84, p. 1018, n. 1, p. 1023, n. 29, p. 1028, n. 75, p. 1029, n. 82. (2) 40 **Cyc.**, p. 1015, n. 76. (3) 40 **Cyc.**, p. 1004, n. 4. (4) 40 **Cyc.**, p. 1023, n. 29, p. 1165, n. 87, p. 1331, n. 42, p. 1332, n. 46. (5) 4 **C. J.**, p. 883, n. 33; 40 **Cyc.**, p. 1144, n. 53, p. 1145, n. 54, p. 1151, n. 94. (6) 40 **Cyc.**, p. 1019, n. 3, p. 1154, n. 25, 26. (7) 40 **Cyc.**, p. 1033, n. 12, p. 1167, n. 94. (8) 38 **Cyc.**, p. 1945, n. 32; 40 **Cyc.**, p. 1359, n. 77.

APPEAL from a judgment of the Superior Court of Los Angeles County. John Perry Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.        ₒ

G. P. Adams and W. W. Orme for Appellant.

Frank G. Tyrrell and R. A. Jarrott for Respondent.

---

7. See 26 Cal. Jur. 692.

THE COURT.—This is an appeal from an order and judgment of the superior court of the county of Los Angeles admitting to probate the will of D. K. Smith, deceased.

The decedent at the time of his death, which occurred on February 28, 1925, was seventy-nine years of age. His widow, contestant and appellant, survived him but he left no issue. By a will bearing date February 23, 1925, the decedent devised and bequeathed his entire estate to the proponent and respondent, who was a friend of some years' standing. On March 5, 1925, the proponent filed a petition for probate of said will and prayed that letters of administration with the will annexed be issued to him. The appellant thereupon filed her contest alleging, among other things, that she was the surviving widow of said decedent; that at the time of the execution of the will the decedent was not of sound and disposing mind, and that the execution thereof was procured through undue influence. A trial of said contest was had before the court without a jury and the order and judgment admitting the will to probate, and from which this appeal is prosecuted, were duly entered.

Inasmuch as the contestant reiterates herein that the decedent was without testamentary capacity at the time the will was executed and that said will was the creature and product of undue influence exerted upon the testator by the proponent thereof, we will set forth in substance the evidence relating to or bearing upon those issues.

Barbara M. Smith, the contestant, testified that she was the widow of the decedent and that he was seventy-nine years of age at the time of his death; that he was taken sick on February 23, 1925; that he was seriously ill, his heart failing and his body in a state of utter collapse; that he refused to leave the cabin where he had been living in back of her house and declined to go to a hospital; that she saw the proponent about the decedent's cabin on the day the will was executed; that proponent came to her house at 9 P. M. on said day and during the course of the conversation inquired if the witness thought that decedent would die during the night; that she went to decedent's cabin at 10 P. M. that night and the proponent and his wife were there; that decedent was in bed "in a semi-conscious condition, with his eyes half open, and his mouth open, panting for breath";

that he was "apparently unconscious,—in a stupor or daze"; that decedent did not recognize her; that "his mind worked very slowly"; that she saw decedent at 5:30 A. M. the following morning and "he was very much worse than the night before"; that "his mind was dazed"; that he was taken to a hospital on February 24, 1925; that in the afternoon of said day he "appeared to be better"; that "he appeared rational then."

Thomas Lavell testified that he knew the decedent and his wife intimately; that he saw decedent at the hospital on February 25, 1925, and found him to be "an extremely sick man"; that he was "really too sick to be conversed with" and "was half out of his head, you might say"; that he answered some questions "irrelevantly" and others "relevantly"; that when he first saw decedent at the hospital he thought he was semi-delirious because he failed to reply to some questions.

Marcel L. Maxey testified that he saw decedent at the hospital the day preceding his death and "he seemed rather in a daze."

John E. Spaulding, proponent, called on behalf of the contestant under section 2055 of the Code of Civil Procedure, testified that he stayed with the decedent on February 23, 1925, continually from 9:30 A. M. until 6 A. M. the following day with the exception of but a few short periods; that the contestant came to the cabin a few times during this period to see and inquire of the decedent; that she asked the witness if the decedent had made "out any papers" and suggested that he prevail upon the decedent to go to a hospital as she did not "want him to stay down here and disgrace me any longer"; that in response to the decedent's interrogatories he conveyed to him the substance of the witness' conversation with the contestant; that the decedent stated, "Well, she is awful confounded interested about me now. I will make a will. Look over in the drawer and you will find some paper"; that he dictated the will to the witness' wife; that decedent signed it and witness and his wife also signed at the end thereof; that decedent said, "You will need a witness to this. Go and get Mr. Britt"; that the other witness was secured; that decedent asked the proponent to keep the will; that decedent discussed some of the

property with him; that he and his wife were alone with the decedent during the night on which the will was executed.

Dr. John L. Kirkpatrick testified in response to a lengthy hypothetical question that in his opinion the decedent at the time of executing the will was "irrational and incompetent" —this answer was apparently based on his next statement that "A man of his age, if he was suffering from this acute autointoxication and absorption of poisons, and he was irrational Monday morning, and he was also irrational Tuesday, he certaintly could not have recovered any normal state Monday night. If he died of acute autointoxication, he would not be clear at any time. There might be apparently intervals in which he would seem to be talking all right, but he would never be perfectly clear to a person who was skilled and was watching him."

On cross-examination the witness testified that if the decedent at the time of executing the will had intelligently discussed his property and exercised good business judgment he would "think it was all right." In response to a question propounded by the court the witness stated that if the decedent was not irrational on Monday and Tuesday there was nothing else to indicate that decedent was incompetent when he executed the will "only his age and his general sickness."

Miss L. J. Sherrod testified that she had been the decedent's day nurse; that he recognized all of his friends that came to see him and spoke with them; that "he appeared to be rational, all the time, and conscious"; that he answered questions "rationally and reasonably"; that "his mentality seemed quite clear all the time."

Mrs. Geneva Spaulding, wife of the proponent, testified that decedent dictated the will to her and that she wrote it on paper; that decedent signed it and requested the witness and her husband to sign their names and suggested that a witness be procured; that her husband secured Mr. Robert L. Britt, and he signed as a witness at decedent's request and after the latter had declared the instrument to be his will and acknowledged his signature; that the will was executed after 10 P. M. on February 23, 1925.

Robert L. Britt testified that proponent came for him after midnight on February 23, 1925; that they went to the

decedent's cabin; that he conversed with the decedent; that decedent stated he had made and signed a will, which decedent read to the witness, and asked the latter to sign his name as a witness thereto; that "a man that would talk as intelligently as he did, especially in a business matter of that kind, I would consider of very sound mind."

As indicated at the commencement of this synoptical statement we have attempted to set forth in substance only that evidence which might have some bearing on the issues of testamentary capacity and undue influence.

[1] The actual mental condition of the decedent at the time of the execution of the will is the question to be determined upon a contest based on his alleged incompetency and evidence tending to show unsoundness of mind either before or after the execution of the will is important only in so far as it tends to show mental condition at the time of the execution of the will. (*Estate of Perkins,* 195 Cal. 699 [235 Pac. 45]; *Estate of Casarotti,* 184 Cal. 73 [192 Pac. 1085]; *Estate of Dolbeer,* 149 Cal. 227 [9 Ann. Cas. 795, 86 Pac. 695].) To overcome the presumption of sanity the contestant must show affirmatively and by a preponderance of the evidence that the testator was of unsound mind at the time he executed his will. (*Estate of Casarotti, supra; Estate of Gow,* 181 Cal. 106 [183 Pac. 794].)

[2] It is declared in *Estate of Perkins, supra,* that "Mental derangement sufficient to invalidate a will must be insanity in one of two forms: (1) insanity of such broad character as to establish mental incompetency generally, or (2) some specific and narrower form of insanity under which the testator is the victim of some hallucination or delusion," and even in this latter class of cases the evidence "must establish that the will itself was the creature or product of such hallucination or delusion."

[3] A testator is of sound and disposing mind and memory if, at the time of making his will, he has sufficient mental capacity to be able to understand the nature of the act he is doing, and to understand and recollect the nature and situation of his property and to remember, and understand his relations to, the persons who have claims upon his bounty and whose interests are affected by the provisions of the instrument. (*Estate of Sexton,* 199 Cal. 759 [251 Pac. 778];

*Estate of De Laveaga,* 165 Cal. 607 [133 Pac. 307]; *Estate of Huston,* 163 Cal. 166 [124 Pac. 852].)

[4] In our opinion the evidence outlined above is not sufficient to establish that the testator was incompetent at the time he executed his will. Disregarding any conflicting evidence and resolving whatever conflicts there may be in the evidence in favor of and granting to the contestant every possible inference to be drawn from the evidence, there still remains a hiatus in the chain of proof that at the time of the execution of the will the testator was mentally incompetent or that he was at the time subject to delusions which in any manner affected his testamentary act.

Nor do we think the evidence above narrated is sufficient to warrant and support an inference that the testator was induced to make the will in question as the result of the undue influence of the sole beneficiary named therein. [5] Undue influence has been repeatedly defined to be "the exercise of acts or conduct by one person toward another person by means of which the mind of the latter is subjugated to the will of the person seeking to control it." (*Estate of Newhall,* 190 Cal. 709, 717 [28 A. L. R. 778, 214 Pac. 231, 234].) It is declared in *Estate of Bryson,* 191 Cal. 521, 541 [217 Pac. 525, 533], that "In order to establish that a will has been executed under undue influence, it is necessary to show, not only that such influence has been exercised, but also that it has produced an effect upon the mind of the testator by which the will which he executes is not the expression of his own desires. . . . The presumption of undue influence is not raised by proof of interest and opportunity alone. In order to set aside a will for undue influence, there must be substantial proof of a pressure which overpowered the volition of the testator at the time the will was made."

The evidence of the contestant relating to the issue of undue influence does no more than show that the proponent had the opportunity to make the alleged false statements attributed to him touching asserted conversations with the contestant. But there is no showing in addition that the mind of the testator, at the time of the making of the will, was subjugated to and dominated by the desires and designs of the proponent to the point of undue influence. More-

over, there is a conflict in the evidence as to the correctness or falsity of these statements made by the proponent to the decedent and this was within the province of the trial court to consider.

[6] The fact that the will of a testator may be unnatural, unfair, or unjust creates of itself no presumption that the decedent was incompetent or that the instrument was procured by undue influence, nor does it shift the burden of proof to the proponent. In *Estate of Martin*, 170 Cal. 657, 663 [151 Pac. 138, 141], it is declared that "a testator has the right to make an unjust, or an unreasonable, or even a cruel will and that no will may be legally set aside upon the mere establishment that it is such a will."

[7] We do not wish to be understood as characterizing the will in question as an "unfair, unjust or unnatural" will. In our view the evidence tends to stamp it as a fair and just will, for it was shown that the decedent and proponent had been intimate friends for many years; that decedent was solicitous of the proponent's well-being and had often loaned him money for various purposes; that he had often expressed the desire and willingness to assist proponent in acquiring his own home, and that the proponent had cared for the decedent in his last illness. On the other hand, the evidence tends to show that the decedent and contestant had experienced certain marital difficulties which terminated in the filing of a divorce action by the contestant in 1916 or 1917; that said divorce action proved abortive; that decedent and contestant had never resumed marital relations thereafter, and that the decedent had stated that the contestant had sufficient property in her own name. When these matters and circumstances are borne in mind they tend in some degree to account for and explain the dispositive provisions of the decedent's will.

[8] We are not prepared to hold that the contestant was injured as a result of the trial court's declaration that he was not assisted in the determination of the cause by the testimony of Dr. J. L. Kirkpatrick and that the introduction of similar expert testimony would therefore tend to "waste time." The court did not preclude the contestant from introducing further expert testimony, for he further declared, "I don't want to be arbitrary if you feel that you want to put him on, I will give you the opportunity to do so."

Moreover, as contestant's plan was to ask "the same line of questions propounded to Dr. Kirkpatrick," and as the principal hypothetical question put to said witness contained matters which had not been established by the evidence adduced, it follows that contestant suffered no prejudicial injury as a result of the court's expression of its attitude in the premises.

The rulings of the court below excluding certain testimony of Dr. W. P. Burke and Dr. J. F. Scherfee as being privileged within the provisions of subdivision 4 of section 1881 of the Code of Civil Procedure were correct. (*In re Redfield*, 116 Cal. 637, 644 [48 Pac. 794]; *Estate of Nelson*, 132 Cal. 182, 187 [64 Pac. 294]; *Estate of Budan*, 156 Cal. 230, 232 [104 Pac. 442].)

An examination of the several asserted "errors in law" fails to disclose anything prejudicial to the contestant.

It was for the trial court to weigh and pass upon the asserted discrepancies and falsities in the evidence adduced by the proponent.

For the foregoing reasons the order and judgment appealed from are hereby affirmed.