[Civ. No. 7513. First Appellate District, Division Two.—November 17, 1930.]

In the Matter of the Estate of JAMES McDONNELL, Deceased. NORA FITZGIBBON, Appellant, v. JAMES McDONNELL et al., Respondents.

Dunne, Dunne & Cook for Appellant.

John J. Barrett and Frank I. Barrett for Respondents.

STURTEVANT, J.—James McDonnell died in San Francisco on December 5, 1927. He was a resident of San Francisco and left estate there. He left him surviving as his only heirs two sisters, Ellen McDonnell and Mrs. Nora Fitzgibbon, and seven nieces and nephews, children of a deceased brother. The decedent left a will in which he named James McDonnell, one of his nephews, as executor. The nephew offered the will for probate and Mrs. Fitzgibbon, one of the sisters, filed a contest. The contest was answered and a trial was had in the trial court before the court sitting with a jury. At the end of the contestant's case the proponent of the will made a motion for nonsuit. The motion was granted and from a judgment entered thereon the contestant has appealed. In her contest she set forth two counts. In one count she pleaded that the testator was of unsound mind, and in the other count she pleaded that the testator was acting under undue influence. A hearing was had on both counts and we will discuss the case as made out as to each count in the order stated.

As the heirs of decedent were collateral it may not be said that the will was unnatural. (26 Cal. Jur. 697.)

There was evidence that at the time the will was made the decedent was seventy-two years of age; that at times he had been sick and had suffered from bladder trouble, dropsical conditions, dizzy spells and other ailments, but at the time the will was made and before and after that date he was able to be out and was not confined to the house. There was evidence that he was stingy, ill tempered, dictatorial and repulsive in personal habits. He entertained perverse opinions and unreasonable prejudices. He was peculiar in his dress and manners. He did not associate intimately with his kith or kin or others. There was some evi-

dence that he had a poor memory. He was solitary in his habit of living. He was not a pleasant person mentally or physically. When he was a young man he injured his head. The contestant testified that continuously after that he was "insane". She did not further explain. However, the record discloses that after that accident the decedent came to America, engaged in business, acquired the estate disposed of by the will, invested his moneys in the stock of the First National Bank of San Francisco, or deposited it in savings banks, or loaned it on notes secured by mortgage on real estate. The foregoing facts do not, whether we take them separately or collectively, show that at the time of making his will the decedent did not have sufficient mental capacity to enable him to understand the nature of the act he was doing and to understand and recollect the nature and situation of his property and to remember and understand his relations to, the persons who had claims upon his bounty and whose interests were affected by the provisions of that instrument. He had capacity to make a will (*Estate of Smith*, 200 Cal. 152 [252 Pac. 325]). It will be presumed that the decedent was of sound mind and no inference to the contrary may be based on the evidence contained in the record.

Before proceeding to discuss the second count it may be helpful to state that the decedent came to this country, located in San Francisco, and engaged in the saloon business. For a time immediately prior to April 18, 1906, his nephew James McDonnell worked for him as barkeeper. After that date the decedent again opened up a place of business, but the nephew did not return to work for him, but opened up a saloon of his own. When the prohibition enactments went into effect both decedent and the nephew retired from the liquor business. About the time the decedent retired from business he went to live in the house of the contestant and paid her two dollars a week. From the time the decedent came to San Francisco and down to the date of his death his relations were friendly with his nephew and the nephew acted as a helper in some business transactions. During the same time the decedent made certain loans to his nephew. At the time of the death of the uncle the nephew owed him $21,000 on a promissory note secured by a mortgage on real estate in San Francisco.

In the month of June, 1925, the decedent left the home of the contestant and went to reside with a niece, Mrs. Dasmann. The date of that departure does not clearly appear. In one place the contestant said that it was Sunday, May 31, 1925, and at other places she gave other dates, but in one place she stated that it was Sunday, June 22, 1925. Shortly prior to the time the decedent moved out he and the contestant had something of a dispute. We need not pause to state the exact facts in that connection. The contestant stated that she had turned around a street corner and that she saw the decedent step into an automobile driven by James McDonnell. The will was executed according to the face thereof on June 25, 1925. ▉ No direct evidence was given by any witness to the effect that any undue influence was exercised by any person or persons over the decedent at the time the will was executed—nor at any other time. The proponent testified that he did not know that a will was to be executed or was executed until after the death of the decedent. Neither of the subscribing witnesses and no other person gave any evidence regarding the execution of the will, the manner in which it was executed, the place at which it was executed or by whom it was executed. It will not be presumed that a person has exerted undue influence, but it must be proved by the person alleging the fact. The contestant asserts that under certain circumstances undue influence may be inferred. Conceding that that is so, it is sufficient to state that no fact was introduced into evidence on which undue influence can be inferred in the instant case. As the contestant did not call the attesting witnesses, at least as to the count we are now discussing, the trial court did not err in granting the nonsuit. (26 Cal. Jur. 768.) ▉ In this connection it should be stated that the contestant asserts that the proponent James McDonnell occupied a confidential relationship to the testator and that if the will is upheld the nephew gains an advantatge from the testator and such transactions are presumed to be entered into by the latter without sufficient consideration and under undue influence. The same attack has been made frequently, but where, as here, there is no evidence that the beneficiary was active in procuring the execution of the will or participating in the execution of the will to any extent the claim is not well

founded. (*Estate of Ricks,* 160 Cal. 450, 453, 461 [117 Pac. 532]; *Estate of Anderson,* 185 Cal. 700, 717 [198 Pac. 407]; *Estate of Shay,* 196 Cal. 355 [237 Pac. 1079]; *Estate of Baird,* 176 Cal. 381, 382, 384, 385 [168 Pac. 561].) For the reasons stated, we think the contestant did not make out a *prima facie* case and that the trial court did not err in granting the motion for a nonsuit.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.