[S. F. No. 14916.   In Bank.—February 5, 1936.]

In the Matter of the Estate of ELLA A. LEAHY, Deceased. ANNA L. DIXON, Appellant, v. HARRY M. CORNYN, as Executor, etc., et al., Respondents.

Aaron N. Cohen and C. K. Bonestell for Appellant.

John H. Ankele, Jr., and Ivan Maroevich for Respondents.

CONREY, J.—Ella A. Leahy, an unmarried woman of the age of about 62 years, died on the first day of August, 1932, in San Mateo County where at that time she resided in the home of her sister, Mary L. Cornyn. With Mary L. Cornyn also lived her son, Harry L. Cornyn. On June 24, 1932, Miss Leahy executed a will by the terms of which she gave $500 to her sister Anna Dixon and, after making other small specific bequests, gave the rest of her estate to Mary Cornyn, naming Harry Cornyn as sole executor without bonds. This will having been duly admitted to probate, Anna Dixon thereafter filed her petition contesting its probate on several grounds, all of which except that of undue influence were abandoned during the trial. At the conclusion of the evidence, respondents moved for a directed verdict, which motion was denied, and the jury returned a verdict in favor of the contestant. Respondents then moved for judgment notwithstanding the verdict, which motion was granted, and judgment entered accordingly. This is an appeal by the contestant from that judgment.

By section 629 of the Code of Civil Procedure it is provided that when a motion for a directed verdict, which

should have been granted, has been denied and a verdict rendered against the moving party, the court, at any time before the entry of judgment, either of its own motion, or on motion of the aggrieved party, may render judgment in favor of the aggrieved party notwithstanding the verdict.

It may plainly be inferred that the rules governing a directed verdict are those which govern the making of an order or judgment notwithstanding the verdict. It is established law that a directed verdict may be granted ''only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given''. (*Estate of Lances,* 216 Cal. 397, 400 [14 Pac. (2d) 768].) We must, therefore, examine the evidence for the purpose of determining the right of the trial court to grant the motion for judgment in this case.

A will giving the estate of the testator to preferred legatees as against a brother or a sister is not merely for that reason, an unnatural will. ''As the heirs of decedent were collateral it may not be said that the will was unnatural.'' (*Estate of McDonnell,* 109 Cal. App. 577, 578 [293 Pac. 651, 652].) In *Estate of Chevallier,* 159 Cal. 161, 169 [113 Pac. 130], referring to a will which showed discrimination in favor of one sister as against another, this court said: ''She remembers one sister by a gift of a personal memento and to the other, evidently the favored sister with whom for years she had been living, she leaves the rest of her estate. Such disposition, so far from giving evidence of testamentary incapacity, was not even unnatural.'' (See, also, *Estate of Easton,* 140 Cal. App. 367 [35 Pac. (2d) 614].)

The testatrix died as the result of a cancer, from which she had been suffering for at least many months. During that time physical weakness increased; but the evidence leaves no doubt of her mental capacity at the time when the will of June 24th was executed. Contestant testified that at some time in June, 1932, Mary told her that Ella was getting very weak and losing her mind. But that was not competent evidence of the fact in question. Appellant's own review of the evidence shows nothing more than physical weakness of the testator. The lawyer who came on June 24th at Harry

Cornyn's request and drew the will, testified that he obtained his instructions from Miss Leahy in her room, and that at that time there was no one else present. This testimony shows instructions by the testator, given in detail respecting the various provisions of the will. At one point, where some gifts of jewelry were being discussed, the attorney went out and called Harry Cornyn and asked him to bring a certain box of jewelry. It further appears from this testimony that after the will had been written and was ready to be executed, witnesses were procured for that purpose, and it appears that Harry Cornyn was present at the time of execution of the document. The attorney, and also Miss Brady, a witness to the will, testified that when the attorney started to read the will, Miss Leahy took it out of his hands and said, "I will read it myself," and she had on her glasses and read it. From a full consideration of the evidence, therefore, it is or should be undisputed that at the time of the execution of the will the testator was of sound and disposing mind, and that there was no direct evidence of anything done by Mrs. Cornyn or by her son in the nature of persuasion, request or insistence of any kind in relation to the making of the will.

By reason of the facts above stated, the contestant is obliged to rely upon indirect and circumstantial evidence. That such evidence may be sufficient to establish undue influence in the procuring of a will is confirmed by numerous decisions. Thus in an early case it was said: "Evidence must be produced that pressure was brought to bear directly upon the testamentary act; but this evidence itself need not be direct. Circumstantial evidence is sufficient. It must, however, do more than raise a suspicion. It must amount to proof, and such evidence has the force of proof only when circumstances are proven which are inconsistent with the claim that the will was the spontaneous act of the alleged testator." (*In re McDevitt*, 95 Cal. 17, 33 [30 Pac. 101, 106].) Again it was said: "While it is true that there must be proof that the influence was used directly to procure the will, general influence not brought to bear upon the testamentary act not being undue influence (*In re McDevitt*, 95 Cal. 17, 33 [30 Pac. 101]), such proof exists where the evidence is of such a nature as to warrant the inference that the will was the direct result of the influence exerted for the purpose of procuring it, and was not the natural result of the uncon-

trolled will of the testatrix. (See *Estate of Arnold*, 147 Cal. 583, 589 [82 Pac. 252] ; *Estate of Welch*, 6 Cal. App. 44, 50 [91 Pac. 336].) '' (*Estate of Snowball*, 157 Cal. 301, 307 [107 Pac. 598].)

█ Let us then inquire what further evidence was produced which under the rule of the foregoing cases would have any substantial value in support of the contention that undue influence was used in procuring the execution of the will in the instant case. One circumstance relied upon is that at one time Miss Leahy had intended to divide her estate equally between her two sisters. In September, 1930, she had made a will to that effect. On April 26, 1932, she executed a codicil to that will, thereby making changes in some small legacies; and yet on June 24, 1932, she revoked those former instruments and executed the will against which the present contest is directed. It further appears that for a considerable period of time before June 24, 1932, Harry Cornyn had been active in attention to the business of Miss Leahy, and that in connection with that activity considerable sums of money came into his hands; numerous checks were drawn to his order and signed by her; a parcel of real property was conveyed by decedent to Mary Cornyn; also decedent purchased a trust deed which was outstanding against Mary Cornyn's home and thereafter transferred the papers to Harry Cornyn as trustee for his mother. The evidence of these transactions shows the close relations of affection and confidence existing between decedent and Mrs. Cornyn and her son, and a business agency as between decedent and Harry Cornyn, but it does not appear that any charges of fraud or wrongdoing exist with respect to those transactions. The record is singularly lacking in evidence of any activity on the part of Mary Cornyn personally in procuring the will to be made in her favor.

Another circumstance relied upon by appellant is the fact, as testified to by her, that while Miss Leahy was living at the house of Mary Cornyn, the witness and her daughter were never able to see Miss Leahy alone. ''I went out on the 24th day of June, 1932, but we were not allowed to go in.'' On cross-examination she admitted that after waiting about twenty minutes she was admitted, and was informed at the time that she was required to wait because Miss Leahy's attorney was there with her. While Mrs. Dixon complains that she was never able to see her sister, the testator, alone, there is

no evidence that she ever requested a private interview or that such request, if made, was refused.

It is conceded that none of the circumstances shown by the evidence, taken alone, would have been sufficient proof of undue influence, but it is contended that when all are taken together they are sufficient to support an inference that undue influence was exercised, and thus are sufficient to support the verdict. We have compared the record here with various cases wherein a conclusion was announced in line with this contention; for example, *Estate of Nelson,* 134 Cal. App. 561, 565 [25 Pac. (2d) 871]; *Estate of Graves,* 202 Cal. 258, 262 [259 Pac. 935]. We find in those cases various facts in the relations of the parties, and pertaining to the transactions bearing upon the execution of the will, very different from the facts in the case at bar. In this case we think that the evidence for the contestant goes no further than perhaps to justify suspicion; but it has no substantial force as evidence that such suspicion is well founded. This brings us to the conclusion that the court did not err in granting the motion for judgment notwithstanding the verdict.

The judgment is affirmed.

Thompson, J., Shenk, J., Seawell, J., Curtis, J., and Waste, C. J., concurred.