[Civ. No. 5615.   Third Appellate District.—May 23, 1936.]

In the Matter of the Estate of JULIA M. SHORT, Deceased. DIXIE PULLIAM as Executrix, etc., Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Corporation) et al., Respondents.

E. L. Webber and Nathan F. Coombs for Appellant.

Clarence N. Riggins for Respondents.

PLUMMER, J.—This cause is before us for the second time on an appeal prosecuted by the contestants based upon the ground of alleged undue influence in the making of the will executed by the deceased on the 12th day of April, 1933.

Upon the institution of this action three grounds of contest were alleged: Lack of execution of the will; undue influence; and unsoundness of mind. The trial court granted a non-suit as to the alleged non-execution of the will, and also, as to the allegation of undue influence. The cause was submitted to the jury on the alleged ground of unsoundness of mind. The jury found in favor of the contestants, and upon appeal this court held that there was no evidence to support the verdict of the jury, and that the testimony introduced in the cause overwhelmingly established the mental capacity of the testatrix to execute a will.

The opinion filed by this court upon the first appeal is reported in *Estate of Short,* 7 Cal. App. (2d) 512 [47 Pac. (2d) 555]. The facts involved in the case are all summarized in the opinion heretofore filed, and for the sake of brevity, are referred to and made a part of this opinion for a statement of the testimony introduced upon the trial.

The will executed by the deceased left the property in trust which was valued at the sum of approximately $18,000, to the Bank of America National Trust and Savings Association, with directions to use both the income and the principal for the care and maintenance of Mary E. Jaspar, the mother of the deceased. At the time of the execution of the will Mary E. Jaspar was of the age of about eighty-six years, and was both physically and mentally enfeebled, and as the testimony shows, incompetent to take care of herself. The will then further provided that the residue, if any, should go to Laura Treadway, a close friend of the deceased.

A *résumé* of the testimony which we have set out in the opinion heretofore filed, in the Matter of the Estate of Short, shows that the testatrix had in mind the care and protection of her mother, and that some provision, such as leaving the property in trust, should be made in order that her mother might be well protected during the remainder of her life.

Mrs. Jaspar died during the pendency of this action, a fact, of course, which the testatrix could not have had in mind

at the time of the execution of the will. The length of time that the mother would survive the daughter could not be measured, but the will provided that during that time the mother should be cared for, not simply by using the income of the estate, but also by using the principal thereof. As we stated in our first opinion, and now reiterate, such a provision was not only natural, but was also a wise provision under the circumstances. We may here add that the testatrix could not of course estimate what portion of the estate would be left after the death of the mother, and therefore the value of the residuary portion was problematical. The testatrix also had in mind that her brother would not properly care for the property, and that it would be wasted if devised to him. So far as the testimony set forth in the transcript discloses, there was no personal animosity existing between the brother and sister, or between any members of the family.

The question involved in this case is that of undue influence. We here set forth the allegation of the contestant's complaint, relied upon in this appeal:

"That on the 12th day of April, 1933, the date (of) said purported and supposed will was made, said Julia Short, the decedent, was unconscious during all of said day, and was unable to recognize persons about her bedside, and scarcely had strength enough to move about the bed. That said Julia Short was confined in bed during all of said day, and for many days prior thereto. That Mary E. Jaspar, mother of said decedent was continuously with said Julia Short on said 12th day of April, 1933, except for a period of more than an hour on the afternoon of said day, when Laura Treadway, the beneficiary under the last will and testament of said decedent, induced and persuaded said Mary E. Jaspar to leave said room in order that said Laura Treadway might be alone in said room with said Julia Short. That during the time said Laura Treadway was in the room with said Julia Short, and while said Julia Short was in said unconscious and weakened condition which rendered her peculiarly amenable and likely to be persuaded by any person and by any influence exercised upon her, said Laura Treadway, knowing such disposition and tendency of the above named decedent to be so influenced, and knowing the impairment of her mental faculties, for the purpose and with the intent

of inducing the said decedent to make a will, making the said Laura Treadway the beneficiary thereunder, presented to, and secured the execution by said Julia Short, of a will previously prepared therefor under the instructions and directions of said Laura Treadway.''

It is further alleged that the residuary legatee knew of the advanced age of Mrs. Jaspar, and that the complete enjoyment of the property would eventually be vested in her. It is further alleged that Julia Short was not given an opportunity to secure the advice of counsel on her own behalf.

■ A reading of the testimony summarized in our first opinion, and a reexamination of the testimony called to our attention by the contestants, reveals the fact that the allegations contained in the foregoing excerpts are unsupported by any testimony introduced in this cause. It is clearly shown that the testatrix was of sound mind; that Laura Treadway was not in the room when the will was made; that Laura Treadway never presented a will to the testatrix; that Laura Treadway did not secure the execution of a will by Julia M. Short; that the will was not previously prepared before the visit of attorney Riggins, to Julia M. Short; that the will was prepared by attorney Riggins after previous consulation with Mrs. Short, and in accordance with her directions.

The evidence further shows that Mr. Riggins had been the attorney for Mrs. Short for a considerable time previous to Mrs. Short being taken to the sanitarium, and that Laura Treadway was informed by Mrs. Short's physician that Mrs. Short was not going to get well, and was advised to take Mrs. Short's attorney to the sanitarium in order that Mrs. Short might have an opportunity to put her affairs in order, and that thereupon, Laura Treadway requested attorney Riggins to go to the sanitarium. Mrs. Laura Treadway was not in the room during the time of the preparation of the will, and the testimony further fails to show that Laura Treadway ever mentioned to Mrs. Short, or to anyone, as to how Mrs. Short should dispose of her property.

It does not appear from the testimony that Laura Treadway took any part in the execution of the will, other than simply calling Mrs. Short's attorney at the request of Mrs. Short's physician. There is absolutely nothing in this

friendly act that can support the inference of undue influence.

The testimony of attorney Riggins set forth on pages 530 and 531, *Estate of Short,* 7 Cal. App. (2d) [47 Pac. (2d) 555], clearly discloses that whatever disposition was made of the property by the testatrix was according to her own wishes and according to her own recommendations and directions given to her attorney. The question of providing for the care and maintenance of the mother was discussed, and attorney Riggins explained the trust provisions that should be contained in the will which would amply provide for the maintenance of the mother and insure her proper care during the remainder of her life. The fact that attorney Riggins did not disclose the provisions of the will to the mother is absolutely of no moment. To have done so would have been a breach of professional duties. The argument of undue influence contained in the contestant's brief upon this point could not be considered as weighing one iota on the question of undue influence alleged to have been exercised by Laura Treadway over the mind of the testatrix. The fact that the deceased requested Laura Treadway to make arrangements for herself and her mother at the sanitarium preceding their going thereto does not justify any inference of undue influence, although it does show a measure of friendship existing between Laura Treadway and the deceased.

The testimony does show that at the time of the execution of the will the testatrix was seriously ill, and that a short time after the execution of the will, died from an attack of heart trouble, which was not the ailment which caused her to go to the sanitarium. But the fact that one is physically ill does not raise any presumption or inference that undue influence has been exercised upon anyone who, under such conditions, executes a will. As we have said, the testimony is overwhelmingly to the effect that the mentality of the testatrix was clear and sound, and that she understood exactly the provisions of the instrument which she was executing. By reason of the decision in the former appeal, this is the law of the case, and must be accepted as final. Undue influence cannot be predicated simply upon a physical infirmity. Especially is this true where the law of the case establishes the mental capacity of the testatrix.

■ As said in the *Estate of Leahy*, 5 Cal. (2d) 301 [54 Pac. (2d) 704], the mere fact that the residue of the estate was given to a close friend instead of to a blood relative does not of itself constitute the instrument an unnatural will.

■ The law is well established that in order to show a will to have been executed through undue influence, it is necessary that the testimony establish not only that such influence has been exercised, but also that it has produced an effect upon the mind of the testatrix. There must be some substantial proof of pressure exercised which overpowered the volition of the testatrix at the time of the execution of the will. There is absolutely no testimony in the record in this case showing any such conditions or actions. We do not need to quote from, but will cite the following cases in support of what we have just said: *In re Leahy Estate, supra; Estate of Finkler*, 3 Cal. (2d) 584 [46 Pac. (2d) 149] ; *Estate of Smith*, 200 Cal. 152 [252 Pac. 325] ; *Estate of Holloway*, 195 Cal. 711, 712 [235 Pac. 1012] ; *Estate of Anderson*, 185 Cal. 700 [198 Pac. 407]. A quotation from these cases would only unnecessarily lengthen this opinion.

There being no testimony in the record in support of the allegations set out in the contestant's complaint which we have set forth herein, it follows that the trial court was correct in granting the proponent's motion for a nonsuit, and the order and judgment of the trial court admitting the will to probate after granting the proponent's motion for a nonsuit must be, and the same are, hereby affirmed.

Thompson, J., and Pullen, P. J., concurred.