[Civ. No. 11005.   First Appellate District, Division Two.—March 20, 1939.]

In the Matter of the Estate of ISAAC D. KLOPSTOCK, Deceased.   DAVID KLOPSTOCK et al., Appellants, v. FLORA E. SHORT et al., Respondents.

Joseph T. O'Connor and Leo R. Friedman for Appellants.

H. U. Brandenstein and Samuel M. Samter for Respondents.

SPENCE, J.—The appellants, who are the three brothers of the deceased and are the contestants herein, appeal from the judgment of the trial court admitting to probate a will executed by the deceased in 1932 and setting aside an order previously made admitting to probate a will executed by the deceased in 1925.

The grounds of contest urged in the trial court were that Isaac D. Klopstock, deceased, was not of sound mind when he executed the 1932 will; that said will was the result of undue influence exerted upon said deceased by Grace E. Klopstock, who was the wife of said deceased and by Samuel Samter; and that said Grace E. Klopstock and all persons claiming under the will of said Grace E. Klopstock were guilty of laches and were estopped from asserting that the 1932 will was the last will and testament of said deceased. The trial court found against the contestants on all of these issues and judgment was entered accordingly.

Isaac D. Klopstock, deceased, died in 1933, some nine months after the execution of the 1932 will. He had married

Grace E. Klopstock in 1902 and they had lived happily together throughout the thirty-one years of their married life. There were no children of this marriage. In 1930 the deceased suffered a stroke and he was a sick man from that time until his death. He had executed an holographic will in 1925 under which his three brothers, his sister and a friend would have received cash bequests amounting to $27,500. In that will, the residue of his estate was left to his wife Grace E. Klopstock and in the event that she predeceased him, then to his brothers and sister. His wife and his brother Frederick were named as executors. In 1932 he executed the will which was the subject of the contest by his three brothers. In that will, the cash bequests were reduced to a total of $10,000. The three brothers were omitted, the bequest to his sister was reduced and legacies of $1,000 each were made to five nephews and nieces. The residue of his estate was left to his wife, and in the event that she predeceased him, then to his brothers and sister. His wife was named as executrix in this will. All of the property of the deceased was community property.

The will of 1932 was drawn by Samuel Samter, an attorney at law who had known the deceased for twenty-five or thirty years and who had acted as the attorney for the wife of the deceased. Mr. Samter and Mr. Berman, an attorney at law associated with Mr. Samter, were the subscribing witnesses. Mr. Samter had visited the deceased upon numerous occasions after the deceased became ill in 1930. In 1932, he was advised by the wife of the deceased that the deceased wanted to see him regarding the making of a new will. Mr. Samter called upon the deceased and obtained the necessary information for the purpose of making the will. Mr. Samter and the deceased were the only ones present on that occasion and the conversation lasted for about one hour. The deceased told Mr. Samter that he had previously made a will in 1925; that conditions had changed since that time and that he desired to make some changes; that his stocks had gone down and he was not as rich a man as he was in 1925; that he wanted to cut down the bequests which he had made in the 1925 will as he had to look out for his wife. They discussed the fact that all the property was community property and the deceased said he knew that one-half of the property would

go to his wife in any event. The deceased did not have the 1925 will before him nor did he have any memorandum as to the provisions he desired made. He gave and spelled the names of the various legatees together with the amount to be specified in the will for each of said legatees.

Thereafter Mr. Samter drafted the will and again visited the deceased on September 16, 1932, when the will was executed. He was accompanied by Mr. Berman and there were no other persons present on that occasion. The deceased carefully read the entire will including the attestation clause and discussed its various provisions at some length with Mr. Samter. The deceased said that he understood it and was ready to sign it. In response to questions from Mr. Samter, he declared it to be his last will and requested Mr. Samter and Mr. Berman to sign as witnesses. These parties were with the deceased for about half an hour on this occasion. Both Mr. Samter and Mr. Berman testified that, in their opinion, the deceased was of sound mind at the time the will was executed.

Appellants produced numerous witnesses including relatives, employees, a doctor and a nurse. None of said witnesses could testify to having seen the deceased on the day that the will was executed and their testimony related to times either before or after that day or both. All of said witnesses expressed the opinion that the deceased was of unsound mind. They testified regarding the physical and mental condition of the deceased as it appeared to them over a long period of time, and regarding certain abnormalities in his conduct. They further testified that he had delusions at times. It should be stated, however, that appellants make no claim that the will was the product of any insane delusion or hallucination but they do make the claim that deceased ''was suffering from insanity of such broad character as to establish mental incompetency generally'' and that he lacked testamentary capacity as ''he did not know, understand or appreciate the nature, character, quality or extent of his estate''.

Appellants contend that the evidence was insufficient to support the findings to the effect that the deceased was of sound mind but we find no merit in this contention. The issue before the trial court was whether the deceased was of sound mind at the very time of the execution of the will and

while evidence was admissible to show his mental condition both before and after the execution of the will, such evidence was important only to the extent that it tended to show his mental condition at the time in question. (*Estate of Sexton,* 199 Cal. 759 [251 Pac. 778]; *Estate of Smith,* 200 Cal. 152 [252 Pac. 325].) ■ It should also be noted that the authorities make it entirely clear that it is not every mental impairment or deviation from the normal which will deprive a testator of testimentary capacity. (*Estate of Finkler,* 3 Cal. (2d) 584 [46 Pac. (2d) 149]; *Estate of Sexton, supra; Estate of Shay,* 196 Cal. 355 [237 Pac. 1079]; *Estate of Casarotti,* 184 Cal. 73 [192 Pac. 1085]; *Estate of Chevallier,* 159 Cal. 161 [113 Pac. 130].) As was said in *Estate of Shay, supra,* at page 359, "It is well settled that mere proof of mental derangement or even of insanity in a medical sense is not sufficient to invalidate a will, but the contestant is required to go further and prove either such a complete mental degeneration as denotes utter incapacity to know and understand those things which the law prescribes as essential to the making of a valid will, or the existence of a specific insane delusion which affected the making of the will in question."

In the light of the foregoing authorities, it appears that it would serve no useful purpose to set forth all of the testimony introduced by appellants on the issue of soundness of mind. We may assume, without deciding, that said testimony was such that it would have sustained a finding that deceased was of unsound mind at the time the will was executed. The most that can be said however is that there was a conflict in the evidence but it appears that there was substantial evidence introduced by respondents to sustain the findings of the trial court upon this issue. Under these circumstances, it is well settled that an appellate court may not interfere with the trial court's findings on appeal. In this connection, appellants make the claim that the testimony of respondents' witnesses was inherently improbable but we find nothing in the record to sustain this claim.

■ Appellants further contend that the trial court "erred in finding that the offered document was not procured as a result of undue influence". In support of this contention appellants claim that they made out a *prima facie* case of undue influence and that the effect thereof was "to impose

upon proponents the obligation of presenting evidence of volition". It is a sufficient answer to point out that even assuming that appellants succeeded in making out a *prima facie* case, respondents presented ample evidence to show volition on the part of the deceased and to rebut any alleged *prima facie* case of undue influence made out on behalf of appellants. The trial court was therefore justified in finding in favor of respondents on this issue.

The last contention of appellants is that "the document of 1932 should have been denied probate under the doctrines of laches and estoppel". A consideration of this contention requires the statement of further facts. The 1932 will was placed in the possession of Grace E. Klopstock after it was executed by the deceased. After the death of Grace E. Klopstock in 1935, said will was found in her safe-deposit box. In the meantime, Grace E. Klopstock had joined in offering the 1925 will for probate. In 1933 she was appointed executrix of the 1925 will and acted as such executrix until her death without offering the 1932 will for probate. It is now claimed that she was guilty of laches and that her conduct "was such as to create an estoppel against the 1932 will being offered for probate by anyone claiming through or under her". The only prejudice which appellants claim as a result of the delay in offering the 1932 will for probate until after the death of Grace E. Klopstock, is that they were thereby deprived of the testimony of said Grace E. Klopstock upon their contest of said 1932 will. Appellants state that they have been unable to find any authority in this jurisdiction to sustain their foregoing contention and the authorities cited from other jurisdictions appear to be clearly distinguishable on their facts. (*Hayes* v. *Simmons,* 136 Okl. 206 [277 Pac. 213]; *Milligan* v. *Milligan,* 145 Va. 184 [133 S. E. 672].) Here the estate of the deceased was still in probate and we are of the opinion that the mere fact that the delay in offering the 1932 will for probate may have deprived appellants of the testimony of Grace E. Klopstock did not necessarily require the trial court to find that Grace E. Klopstock was guilty of laches which would create an estoppel against those claiming under her.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

574

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1939.