[Sac. No. 4226. In Bank.—January 28, 1929.]

In the Matter of the Estate of NORMAN SIDNEY RILEY, Deceased. MARGIE DEE RILEY, Respondent, v. MABEL ESTELLA HEUER, Appellant.

P. H. Johnson for Appellant.

T. A. Farrell for Respondent.

PRESTON, J.—Contest of will before probate. Norman Sidney Riley died in the Veterans' Hospital, Livermore,

California, on January 19, 1928. On January 16, 1928, three days previously, the instrument here in question was published. It was prepared by an attorney by the name of Callaghan, residing at Livermore, and was witnessed by him and also by a young man in the employ of said Veterans' Hospital. The sole legatee of the will was Mabel Estella Heuer, a sister of decedent, and her husband, James C. Heuer, was named in said will as executor. The will was prepared in the office of the attorney before consultation with decedent upon information furnished by the said James C. Heuer. Admittedly the information respecting the whole document, except as to one or two spaces left blank until the time of execution, was given to said legatee above mentioned and by her transmitted to her husband and by him to the said attorney.

The contestant is Margie Dee Riley, the widow of decedent. The grounds of contest are unsoundness of mind and undue influence. Both proponent and executor remained in the sickroom during the execution of the document. The verdict of the jury was in favor of contestant on both issues and judgment denying probate to the document as the will of decedent followed. The legatee and proponent has appealed from said judgment.

A careful reading of the record fails to disclose any reason whatsoever for the reversal of this judgment. Counsel presenting this appeal did not try the case in the court below and but for his known sincerity we would make still greater dispatch of it. It must be borne in mind that this court will not construe genuinely conflicting evidence so as to upset the verdict of the jury and the judgment of the court thereon. On the contrary, we do just the opposite. With this rule in mind, an examination of the record shows a veritable avalanche of evidence that decedent, prior to execution of the will and for some days previously, was in a settled condition of mental unsoundness to such an extent as to prevent him from making valid testamentary disposition of his property. This abundantly appears from the lips of three physicians and some six or eight intimate acquaintances, with practically no disinterested evidence whatsoever to the contrary. Ample evidence also was introduced justifying the conclusion that decedent was possessed with the delusion that his wife was the cause of his condition and

had been otherwise unfaithful and derelict. The jury was well warranted in believing that for some years past an estrangement had existed between decedent and the members of his own family, who, the record discloses, consisted of his mother, his sister and at least one brother. Repeatedly declarations had been made by decedent to the effect that he did not want them or any of them to have any of his property.

Decedent was a soldier during the late war and as a result of poisonous gases his lungs and other vital organs were affected and this trouble in later years developed into tuberculosis. For some period of time next before his death he suffered from what the doctors say was tuberculosis of practically all the organs of his body. About the year 1925, Margie Dee Riley was employed by the government as a nurse. In the early part of the year 1927 decedent and said nurse intermarried. The evidence shows that, adhering to his purpose not to leave any of his property to his blood relatives, he did, on October 17th of that year, at a time when his mind was sound, deed his real property, consisting of a house and lot in Sacramento, to his wife and assigned to her his policy of insurance issued to him by the government of the United States, placing the documents in escrow for delivery upon his death.

During the greater part of the married life of decedent and contestant they were happily mated, but it appears that on or about January 6, 1928, the condition of decedent had grown so much worse that he was at that time in practically a dying condition with tuberculosis, as above stated, of all his vital organs. He was at that time suffering from what is known as psychosis, a toxic condition, which means insanity due to absorption of the poison produced by disease other than a true disease of the mind. In this case the toxic condition was caused by the absorption of pus throughout the body, which affected the mind of decedent, which condition resulted from tuberculosis of the lungs, intestines, intestinal tract, bladder and kidneys. At about the above-mentioned date, decedent took a violent dislike to his wife, charging that she was the cause of his physical condition and attributing to her all kinds of humiliating and disgraceful conduct. It is true that

proponent claims that this belief on the part of decedent may have been well founded, but there is ample evidence to show that the jury was warranted in believing that it was wholly unfounded and was in fact but a delusion or hallucination of mind on the part of decedent. The evidence was abundant from which the jury concluded that the wife was dutiful and affectionate and had borne her part faithfully and well and was greatly humiliated by the sudden aversion on the part of decedent toward her.

About this said sixth day of January, 1928, decedent caused some third party to request the proponent to come to his house, whereupon she came and practically took charge of the sickroom, contestant, the wife, remaining in the kitchen but still doing all she could for the comfort of decedent. A deep ill feeling developed between the wife and sister during this period, so much so that it resulted in a free-for-all hair-pulling fight on or about January 7, 1928, over the papers which had theretofore been delivered in escrow for the benefit of the wife, the sister having undertaken to get possession of them.

On or about the tenth day of January, 1928, decedent was removed to the Veterans' Hospital. The doctors who saw him on and about this day and friends and acquaintances who saw him during the same period all pronounced him of unsound mind, stating that his conversation was incoherent and there was a wild look in his eyes; that he often failed to recognize his friends and physician. Those acquaintances who saw him later in the hospital were of the same opinion for similar reasons as was also the physician in charge of the hospital. One of the subscribing witnesses had no opinion as to the sanity or insanity of decedent and the attorney, the other subscribing witness, gave unconvincing evidence on that question, due no doubt to lack of acquaintance with and knowledge concerning decedent.

If the evidence in this case was not sufficient to uphold the verdict of unsoundness of mind, if would be hard to imagine a case that could be upheld. The evidence amply warranted the belief that decedent was either in a settled state of mental unsoundness on account of his disease and impending dissolution or that he was suffering from the hallucination or delusion which directly affected the claims

of his wife. (*Estate of O'Connor*, 51 Cal. App. 339 [196 Pac. 792].)

The first and most important ground of appeal seems to be that the court erred in denying a motion for a new trial based upon the affidavits of Bertha M. Riley, a sister-in-law of decedent, and Lillian Riley, the mother of decedent, to the effect that they apparently for the first time had visited decedent in the hospital after the making of the will and a day or two before his death, and there had a conversation with him in which he stated that he wanted the old past differences existing between himself and the family to be forgotten and renewed his love for his family and then and there stated that his wife was well provided for and he did not want her to have any of his property and had arranged it so that she would not get anything; that he used a great deal of vile language respecting his wife to the effect that she was immoral, degenerate and "the vilest scrappings of the earth"; that she had threatened to kill him and had admitted she poisoned his food and much other similar language. In view of the fact that these affiants were relatives of the proponent and apparently in constant association with her and willing to aid her, due diligence would have elicited this information earlier; and in view of the further fact that the affidavits, if credited, show no more than a continuation of the hallucination against the wife above described, we cannot see any abuse of discretion whatsoever in the action of the court in refusing to grant a new trial.

The further point that the verdict was not in proper form is untenable. The form of the verdict was as follows:

"Question: Was Norman Sidney Riley on the 16th day of January, 1928, and at the time of the alleged execution of the document purporting to be his last will and testament and filed herein for probate as such, of sound or unsound mind?

"Answer: Unsound.

"Question: Did the deceased at the time of the execution of the proposed will possess testamentary capacity?

"Answer: No.

"F. H. DICKSON, Foreman.

"Question: Was the execution of the alleged will of Norman Sidney Riley, filed herein for probate and dated Jan-

uary 16, 1928, obtained through the undue influence of Mable Heuer?

"Answer: Yes.

"F. H. DICKSON, Foreman."

Appellant contends that the verdict as to unsoundness of mind was not properly authenticated in that the signature of the foreman does not appear immediately following the answer to said special issue, whereas the next two questions following on the same page are answered by the signature of said foreman of the jury. In our opinion one signature alone at the bottom would have been a sufficient authentication of a verdict on all three interrogatories. (*Estate of Keithley*, 134 Cal. 9–11 [66 Pac. 5].) Moreover, the foreman himself read aloud in open court the verdicts and they were assented to by the jury.

We have read carefully the instructions given by the court. They were specific and ample, not only with respect to the rights of the contestant but equally with respect to the rights of the proponent. The specific criticisms made we do not deem of sufficient importance to require any detailed discussion. The issue of undue influence thus becomes unimportant and need not be discussed.

The judgment is affirmed.

Waste, C. J., Langdon, J., Shenk, J., Curtis, J., Seawell, J., and Richards, J., concurred.